**UNITED STATES of America, ex rel. DAVID R. SILLER**

v.

**BECTON DICKINSON & CO.**

**Civ. No. S 91–33.**

United States District Court, D. Maryland.

Feb. 10, 1993.

Richard D. Bennett, U.S. Atty., D. of Md., Juliet A. Eurich, James G. Warwick, Asst. U.S. Attys., Baltimore, MD and Michael F. Hertz, Director, Commercial Litigation Branch, Michael Theis and Polly A. Dammann, Civ. Div., U.S. Dept. of Justice, Washington, DC, for plaintiff, U.S.

Robert L. Vogel, Washington, DC, and James Henley Morgan, Fort Worth, TX, for plaintiff, David R. Siller.

G. Stewart Webb, Jr., Venable, Baetjer & Howard, Baltimore, MD, Gerard F. Treanor, Jr., Cacheris & Treanor and J. Mitchell Brown, Bastianelli, Brown and Touhey, Washington, DC, for defendant.

## MEMORANDUM OPINION

SMALKIN, District Judge.

This *qui tam* action under the False Claims Act, 31 U.S.C. § 3730, *et seq.* (FCA), is before the Court on the defendant's motion to dismiss. Because the record is adequately developed to enable the Court to adjudicate the motion without an evidentiary hearing or oral argument on the law, no hearing will be held. Local Rule 105.6, D.Md.

The first issue the Court will address is whether it has jurisdiction over the Government's amended complaint of intervention under the timely filing requirements for such intervention found in 31 U.S.C. § 3730(b)(4). Procedural requirements of the FCA have been held to be mandatory. *See, e.g., Erickson ex rel. United States v. American Institute of Biological Sciences,* 716 F.Supp. 908 (E.D.Va.1989).

The relevant statute allows the Government to seek unlimited extensions of the 60–day time period within which it must act under section 3730(b)(4). 31 U.S.C. § 3730(b)(3). In this case, a number of such extensions were sought and granted. The principal problem is with one of the extensions which was sought by a *nunc pro tunc* motion filed with the Court on March 26, 1992, and granted by Judge Legg on March 27, 1992. The previous extension had expired on March 4, 1992, and unless the *nunc pro tunc* order was effective to extend the previous order retroactively, it is plain that the Government's window of opportunity to intervene under § 3730(b) closed irrevocably.

The declaration of the Government's principal local counsel in this case, Assistant United States Attorney Juliet Eurich, recites that, on March 3, 1992, "I signed the government's Motion and Memorandum and *made sure* the papers were placed in the night filing box in the lobby of the

Courthouse on the evening of March 4, 1992 after the Clerk's office had closed for the day." (Emphasis added.) The declaration goes on to state that three weeks later, after being notified by Judge Legg's secretary that no papers had come down from the Clerk's Office requesting a further extension, the Government caused the *nunc pro tunc* motion in question to be filed.

No evidence of the alleged March 4 filing appears on the Court's docket, which is the official index of filed papers ordained in Fed.R.Civ.P. 79(a). Nevertheless, it is possible that a filing might have been made, as defined in Fed.R.Civ.P. 5(e), even though the docket sheet does not reflect that filing. Given chronic understaffing of the Clerk's Office in this District, given the advent of computer-aided docketing with its concomitant "efficiency," and given human error, it is conceivable that papers filed with the Clerk's Office under Rule 5(e) might nonetheless fall into a Bermuda Triangle somewhere between their receipt and a judge's chambers, a misfortune that should not affect the substantial rights of litigants who have indeed filed under Rule 5(e).

The difficulty for the Government in this case is that Ms. Eurich's declaration does not adequately establish, by competent evidence, that the papers actually *were* filed with the Clerk's Office. Ms. Eurich's declaration simply says she "made sure" that the papers were placed in the night depository. This falls far short of the personal knowledge required to give the Court an adequate confidence level to find that a Rule 5(e) filing actually was made. *Cf.* Fed.R.Evid. 602. Without the testimony of someone with personal knowledge that the filing was in fact made, the declaration of Ms. Eurich is insufficient to prove the filing. (Precisely the same difficulty inheres in the declaration of Mr. Warwick as to a subsequent extension, which will be addressed below.)

▪ The Government's attempt to cure the March 4 non-filing by the device of a *nunc pro tunc* motion and order does not suffice. The civil rule governing extensions of time obtained after the expiry of a prescribed filing time does not apply to filing times prescribed *by statute,* even though the computational part of the rule *does* apply to statutory time periods. *Compare* Fed.R.Civ.P. 6(a) *with* Fed. R.Civ.P. 6(b). Therefore, unless other law allows the cure of a missed filing deadline by a *nunc pro tunc* order, the March 27 order can be given no retroactive effect. Given the lack of evidence to establish that the Clerk simply neglected to record a filing that was in fact made, the March 27 order was not a proper *nunc pro tunc* order, in that, rather than correcting the record to show that an entry should have been made, it turned something that was not a matter of record into a matter of record after the fact. This is not an appropriate use of the *nunc pro tunc* device. *See, e.g., United States v. Taylor,* 841 F.2d 1300, 1308 (7th Cir.), *cert. denied sub nom. Rosenstein v. United States,* 487 U.S. 1236, 108 S.Ct. 2904, 101 L.Ed.2d 937 (1988).

▪ Although, because of the March incident, it is not necessary to reach the August incident (where with the exception of a *nunc pro tunc* order, essentially the same thing happened), there is also insufficient evidence of filing as to the August motion, in that the declaration of Assistant U.S. Attorney Warwick simply recites that he gave the papers to his secretary for filing.

For these reasons, the defendant's motion to dismiss the United States as a party and to dismiss the amended complaint will be granted in an Order to be entered separately herein.

▪ There remains the question of the relator's suit. Upon consideration, the Court is of the opinion that Mr. Siller's action is barred under the False Claims Act, in that the matters here in suit were based upon public disclosures in civil hearings, and Mr. Siller was not an original source within the statutory meaning of that term, as fleshed out by case law. *See* 31 U.S.C. § 3730(e)(4). As recognized in, *e.g., United States ex rel. Doe v. John Doe Corp.,* 960 F.2d 318 (2d Cir.1992), the public disclosure bar is an attempt to forestall

opportunistic *qui tam* actions based on publicly available information.

█ In this case, the Court has little difficulty concluding that the 1989 Texas lawsuit filed by the SSI corporation (of which Mr. Siller's brother was president and with which the relator was associated) against Becton Dickinson publicly disclosed the underlying facts in a "civil hearing," as did a 1987 action in *pari materia* filed by another corporation. The Court is of the opinion that the term "civil hearing" is broad enough to include complaints filed in a civil case, even if the matter does not come to full trial or otherwise involve a judicial hearing. *See, e.g., United States ex rel. Stinson, Lyons v. Prudential Ins. Co.,* 944 F.2d 1149 (3d Cir.1991). It is immaterial, given that the Government is not properly an intervenor in this case, that the full gist of the relator's allegations was not contained in the underlying Texas complaint. *See United States ex rel. Precision Co. v. Koch Industries,* 971 F.2d 548, 552 (10th Cir.1992). In this case, the 1989 Texas complaint stated, as relevant to the present motion:

> SSI would show that the prices quoted by BBL to the United States Government were not the best prices quoted to other customers and therefore violated the "Most Favored Customer" provision of its contract with the United States Government pursuant to GSA's 1982 Policy Statement on Multiple Award Schedule Programs and Title XII of the Defense Procurement Reform Act of 1984. BBL sold its products to private hospital and laboratory groups such as Bexar County Hospital and International Clinical Laboratories at a lower price and prevented SSI from servicing these hospitals by placing the distribution function with SSI's competitors in a conspiracy to monopolize the market and destroy SSI by restraining trade. SSI has suffered extensive damages from loss of business due to BBL's actions in prohibiting SSI from competing on the open market and wrongfully favoring SSI's competitors.

Count II, ¶ 9, Plaintiff's Original Petition, attached to defendant's Motion to Dismiss as Exhibit 6.

The Court is unimpressed with the relator's attempt to show that these allegations do not suffice to show fraud against the Government, in that they do not state with particularity the elements of fraud. The plain fact is that the SSI complaint accused the defendant of breaching its contract and a federal statute, which derives from exactly the same core of operative facts—overcharging the Government and not treating it as a "most favored customer"—that forms the basis for this *qui tam* complaint. Given the relator's position within SSI, this Court has no difficulty concluding that this is the kind of opportunistic capitalization on prior, public litigative disclosures prohibited by the policy expressed in, *e.g., Doe, supra.*

Furthermore, the Court is convinced that the plaintiff is not an original source, under the rule in *United States ex rel. Dick v. Long Island Lighting Co.,* 912 F.2d 13, 16 (2d Cir.1990), which was followed by the Ninth Circuit in *Wang v. FMC Corp.,* 975 F.2d 1412 (9th Cir.1992). The Court is not persuaded by the relator's attempts to distinguish these cases from this one. As a corporate insider of SSI, there is no contention that Mr. David Siller is the one who provided the information on which the suit was based to SSI, and his affidavit does not, fairly construed, permit such a conclusion. In fact, there is no indication that any of his observations formed the basis for the 1989 Texas suit by SSI, which in fact was essentially a "knock off" of a similar complaint previously filed by another dissatisfied Becton Dickinson distributor in 1987.

For all the reasons stated above, an order will be entered dismissing the United States as a party to this suit and dismissing its amended complaint, for lack of subject matter jurisdiction, and dismissing the original complaint, for failure to state a claim upon which relief can be granted and for lack of federal subject matter jurisdiction.