**In re Lance Ross PYLE, Debtor.**

**Bankruptcy No. 95–29042–A–13.
Motion No. WG–3.**

United States Bankruptcy Court,
E.D. California,
Sacramento Division.

Oct. 10, 1996.

Robert L. McAlpin, Auburn, CA, and Stephen A. Koonce, Jarvis, Longaker, Koonce & Dashiell, Sacramento, CA, for Creditor William Neuffer.

Gerald L. White, Gary H. Gale, White & Gale, Sacramento, CA, for Debtor Lance Ross Pyle.

## MEMORANDUM OF DECISION

DAVID E. RUSSELL, Chief Judge.

Chapter 13 Debtor Lance Ross Pyle objects to the claim of Creditor William Neuffer alleging that, pursuant to 11 U.S.C. § 502(b)(9) and Bankruptcy Rule 3002(c), Neuffer failed to timely file a proof of claim. Neuffer contends he filed timely and thus the claim is allowable. After a hearing, the matter was taken under submission. For the reasons set forth below, the court will allow the claim.

### FACTS

On September 27, 1995, Lance Ross Pyle ("Debtor") filed a voluntary chapter 13 petition. Shortly thereafter, the Trustee set November 22, 1995 as the date for the first meeting of creditors, with the corresponding proof of claims deadline set for February 20, 1996.

The day after the filing, Robert McAlpin ("McAlpin"), attorney for creditor William Neuffer ("Neuffer"), received a letter from Debtor's attorney notifying him of the bankruptcy. McAlpin, who had earlier filed a state court complaint against Debtor, immediately contacted his client and informed him of the ramifications of Debtor's bankruptcy.

Several weeks later, on October 31, 1995, McAlpin prepared a Proof of Claim to submit to the bankruptcy court. In accordance with his customary practice, McAlpin mailed the original proof to the Eastern District Bankruptcy Court along with a copy, a cover letter, and a return envelope for the return of a conformed copy of the claim once processed by the court. He also placed a "tickler" on his calendaring system for two weeks beyond the date of the mailing to remind himself and his secretary to check to see if the court had returned a copy. McAlpin's November billing statement reflects his charges to Neuffer for these services. Also, McAlpin's copy of the cover letter sent with the claim reflects the correct mailing address for the bankruptcy court, and McAlpin's copy of the proof of claim reflects the correct file number for the Debtor's case.

On the same day McAlpin mailed his proof of claim to the court, the Trustee mailed a

Chapter 13 Plan Summary to creditors. The plan proposed a 100 percent payment on unsecured creditors' claims and listed McAlpin as such. McAlpin received the Plan Summary several days after mailing in the proof of claim and noted he was listed as a creditor[1] for a scheduled amount that exactly matched the amount listed on his proof. He assumed the Debtor allowed the claim and called his client, informing Neuffer that he would begin receiving payments within the next few months. McAlpin believed all that remained in the matter was formal approval of the plan and lapsing of the claims filing bar date.

Sometime in late February or early March of 1996, Neuffer called McAlpin and asked why he had yet to receive payments. McAlpin sent his process server to check the bankruptcy court's file to determine the status of the case. His process server reported that she could not find any proof of claim for Neuffer in the file. After verifying this information, McAlpin immediately filed a late proof of claim on March 21, 1996.

### DISCUSSION

In a chapter 13 bankruptcy, section 502(b) and Rule 3002(c) govern the disallowance of a claim on the basis of untimeliness. 11 U.S.C. § 502(b); Fed.R.Bankr.P. 3002(c). Section 502(b) instructs the court to allow a claim unless a party in interest objects and:

"(9) proof of such claim is not timely filed, except to the extent tardily filed as permitted under ... the Federal Rules of Bankruptcy Procedure...."

11 U.S.C. § 502. Rule 3002(c) sets the time for filing a claim stating:

"In a chapter ... 13 individual's debt adjustment case, a proof of claim shall be filed within 90 days after the first date set for the meeting of creditors called pursuant to 341(a) of the Code ..."

---

**1.** The Debtor's Chapter 13 Plan Summary listed "ROBERT MCALPIN ATTORNEY" as the creditor. However, the debt was owed to McAlpin's client, William Neuffer.

**2.** Unless otherwise indicated, all references to "sections" and "§" refer to the U.S. Bankruptcy Code, 11 U.S.C. § 101 et seq.

Fed.R.Bankr.P. 3002(c). And Rule 5005(a) instructs a creditor where to file the proof of claim:

"The ... proofs of claim or interest ... shall be filed with the clerk in the district where the case under the Code is pending."

Fed.R.Bankr.P. 5005(a).[2]

These provisions function as a statute of limitations for claims by establishing a claims bar date. Claims filed after the expiration of the 90 day period generally do not share in the distribution of the estate. H.R.Rept. No 103–834, 103rd Cong., 2nd Sess. 25–26 (Oct. 4, 1994) ("the amendment to section 502(b) [adding subsection 9] is designed to overrule *In re Hausladen,* 146 B.R. 557 (Bankr.D.Minn.1992), and its progeny by disallowing claims that are not timely filed"); *In re Coastal Alaska Lines, Inc.,* 920 F.2d 1428, 1432 (9th Cir.1990); 8 *Collier on Bankruptcy* ¶ 3002.05 at 3002–16 (15th ed. 1995). The bankruptcy court lacks any equitable power to extend the claims bar date in a chapter 13 case; it may only be extended pursuant to one of the explicit exceptions stated in Rule 3002(c) itself, none of which apply to the case at hand. Rule 9006(b)(3); 3002(c); *In re Coastal Alaska Lines, Inc.* 920 F.2d at 1432; *In re Smartt Constr. Co.,* 138 B.R. 269, 271 (D.Colo.1992).[3]

McAlpin concedes that the claim he filed on March 21, 1996 is untimely. And he forgoes arguing that Pyle's Chapter 13 Plan Summary, listing McAlpin as a creditor, constitutes an informal proof of claim which he might amend with the March 21st filing. *See In re Levy,* 153 B.R. 300, 301 (Bankr. C.D.Cal.1993); *In re Anderson–Walker Industries, Inc.,* 798 F.2d 1285, 1287 (9th Cir. 1986); *In re Franciscan Vineyards, Inc.,* 597 F.2d 181, 182 (9th Cir.1979) *cert. denied* 445 U.S. 915, 100 S.Ct. 1274, 63 L.Ed.2d 598 (1980). Instead, McAlpin invokes the so-called "mailbox presumption".

---

**3.** Both of the cited cases interpret Rules 3002(c) and 9006(b)(3) in the context of a chapter 7 case. The reasoning applies with equal force to a chapter 13 case.

■ In *Hagner v. United States*, 285 U.S. 427, 52 S.Ct. 417, 76 L.Ed. 861 (1932), the Supreme Court stated "[t]he rule is well settled that proof that a letter properly directed was placed in a post office creates a presumption that it reached its destination in usual time and was actually received by the person to whom it was addressed." *Id.* at 430, 52 S.Ct. at 419, citing *Rosenthal v. Walker*, 111 U.S. 185, 193, 4 S.Ct. 382, 386, 28 L.Ed. 395 (1884). McAlpin argues that this presumption applies to his mailing of the proof of claim and thus the court may presume that the clerk of the court timely received it.[4] Debtor does not dispute that if McAlpin mailed the claim on the date alleged the court clerk would have received it well before the expiration of the claims bar date. Rather, Debtor argues that the court should not apply the common law presumption when the purported recipient is the court.

The common law mailbox presumption traces its origins in Supreme Court precedent back to at least the 1880's. *Rosenthal v. Walker*, 111 U.S. 185, 193–94, 4 S.Ct. 382, 386, 28 L.Ed. 395 (1884). It is also a well-established rule in the Ninth Circuit. *Nunley v. City of Los Angeles*, 52 F.3d 792 (9th Cir.1995); *Anderson v. U.S.*, 966 F.2d 487 (9th Cir.1992); *Jones v. United States*, 226 F.2d 24 (9th Cir.1955). Bankruptcy courts frequently apply this rule against creditors to prove they have received notice of the claims bar date. *In re Williams*, 185 B.R. 598 (9th Cir. BAP 1995); *In re Moseley*, 74 B.R. 791 (Bankr.C.D.Cal.1987) (citing to *In re Nimz Transportation Inc.*, 505 F.2d 177 (7th Cir. 1974)); *In re Longardner & Assoc. Inc.*, 855 F.2d 455 (7th Cir.1988) *cert. denied*, 489 U.S. 1015, 109 S.Ct. 1130, 103 L.Ed.2d 191 (1989); *In re Bucknum*, 951 F.2d 204 (9th Cir.1991) (same rule applied to dischargeability of debt complaint). However, the circuits are split as to whether this presumption applies to the filing of a proof of claim. *Compare Chrysler Motors Corp. v. Schneiderman*, 940 F.2d 911 (3rd Cir.1991) (no rebuttable presumption of

filing proof of claim arises from its mailing); *In re Maurice*, 167 B.R. 114 (Bankr.N.D.Ill. 1994) (no rebuttable presumption of filing chapter 13 plan arises from its mailing); *with In re Nimz Transp., Inc.*, 505 F.2d 177 (7th Cir.1974) (a timely and accurate mailing of claim raises rebuttable presumption it was received and therefore filed); *Matter of Kero–Sun, Inc.*, 63 B.R. 50 (Bankr.D.Conn. 1986) (same); *Matter of Overly–Hautz Co.*, 81 B.R. 434 (N.D.Ohio 1987) (same applied to creditor's withdrawal of proof of claim).

McAlpin urges the court to apply the rule established in *In re Nimz Transp., Inc.*, 505 F.2d at 178. In *Nimz*, the claimants first learned that no proofs of claim existed in the court's bankruptcy files long after the claim period expired. The attorney for the claimants asserted that he mailed the claims well before the expiration date. He detailed the normal mailing procedure used in his office and testified that, although his employees could not remember mailing the particular package containing the proofs of claim, he recalled initiating the claim filing process. He produced evidence that the mailing envelope was correctly addressed and that the original cover letter and proofs were not found in a later search of his office. *Id.* at 178.

■ The situation in the case before the court falls squarely within the parameters of the *Nimz* case. Here too, the creditor's attorney, McAlpin, asserts he mailed the proof of claim well before the expiration date. He presented both a copy of the cover letter sent with the claim and a copy of the claim itself. The former correctly reflected the address for the Eastern District Bankruptcy Court, and the latter correctly reflected the Debtor's file number. McAlpin methodically explained his normal procedures for claim filing and tracking, and the steps taken to process the claim in issue. That McAlpin failed to follow through on his "tickler" calen-

---

**4.** McAlpin does not contend that his claim was "filed" on the date deposited into the mail. Such a contention would be unavailing. Fed. R.Bankr.P. 5005(a); *In re Horvath*, 20 B.R. 962, 964 (Bankr.S.D.N.Y.1982); *Cooper v. City of Ashland*, 871 F.2d 104, 105 (9th Cir.1989); *Houston v. Lack*, 487 U.S. 266, 274, 108 S.Ct. 2379, 2384,

101 L.Ed.2d 245, 253 (1988); 2 J. Moore, *Moore's Federal Practice* ¶ 5.11 (2d ed. 1995). McAlpin contends that he may use the mailbox presumption to prove his proof of claim was delivered to and received by the Clerk of the court.

daring system, while perhaps not excusable, is at least understandable given that, several days after mailing the claim to the court, he received Debtor's Chapter 13 Plan Summary listing his claim in the exact same amount noted on his proof.

Debtor urges the court to disregard the *Nimz* line of cases and instead adopt the rule and reasoning of the Third Circuit in *Chrysler Motors Corp. v. Schneiderman,* 940 F.2d at 914. In *Schneiderman,* the debtor filed a chapter 11 petition listing Chrysler as an unsecured creditor with a disputed claim of $519,333.85. Chrysler's attorney prepared a proof of claim and instructed her clerk to prepare an envelope for mailing the claim to the clerk of the bankruptcy court. The attorney then signed and mailed the claim and it was never returned to Chrysler as undelivered. *Id.* at 912.

The Third Circuit refused to apply the mailbox presumption. The court was particularly concerned with the need for finality and certainty in the chapter 11 context, and approved the district court's statement that "restrictiveness is necessary in order to facilitate the expeditious administration of bankruptcy proceedings so that creditors do not have to wait an interminable length of time before a court determines their voting and distribution rights." *Id.* at 913. The court also noted the ability of a creditor to protect itself against this outcome through the use of certified mail, and commented on the potential for a creditor to fabricate evidence, not easily disprovable, that it had properly mailed a claim.

As a threshold matter, this court does not necessarily view the issue as an open question. The Ninth Circuit precedents, in accordance with Supreme Court decisions on the issue, clearly establish the mailbox presumption as the governing law in this jurisdiction. *Nunley v. City of Los Angeles,* 52 F.3d at 796; *Anderson v. United States,* 966 F.2d at 491; *Jones v. United States,* 226 F.2d at 27. They have unequivocally applied that rule to bankruptcy cases. *In re Bucknum,* 951 F.2d at 206; *In re Williams,* 185 B.R. at 599. This court is not at liberty to disregard those precedents. On the other hand, because no Ninth Circuit case has applied the presumption to proofs of claim mailed to a bankruptcy court, the court addresses the Debtor's argument.

This court does not find the *Schneiderman* reasoning applicable to the case at bar. *Schneiderman* involved a chapter 11 petition. In a chapter 11 case, if a court denies the creditor the benefit of the mailbox presumption, it may avoid the windfall accruing to the debtor or other unsecured creditors by enlarging the time for claim filing under Rule 9006(b), provided that the late filing arises from excusable neglect. *Pioneer Investment Services Co. v. Brunswick Assoc. Ltd. Partnership,* 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). A bankruptcy court lacks that power in a chapter 13 case. *In re Coastal Alaska Lines, Inc.* 920 F.2d at 1432.

Also, the *Schneiderman* court premised its decision on the need for finality in chapter 11 plan administration, and, in particular, the need for certainty in voting and distribution rights of the other creditors. Those concerns are not implicated here. The Debtor's plan provides for a 100 percent payment to the unsecured creditors. Those creditors are already receiving payments and including McAlpin's claim will not impact their distributions. Nor will it adversely affect the Debtor. The Debtor already planned to pay the debt owed to McAlpin's client and included it in his chapter 13 plan. Given how quickly McAlpin acted upon learning of the mishap—he filed a late proof of claim within one month of the original claims bar date—Debtor does not, and cannot, point to any prejudice caused by the absence of an earlier docketed claim. Rather, Debtor simply hopes to seize upon a bureaucratic mistake in the docketing of the creditor's proof as a means by which ensnare the creditor and repudiate an admitted debt, one already scheduled for payment. This court might closely question the applicability of the mailbox presumption upon a showing of any prejudice to either the Debtor or some other creditor. But without that showing, the *Nimz* case states the better rule.[5]

5. Rule 5005(a) is an adaptation of Rule 5(e) of the Federal Rules of Civil Procedure. In regards

As an argument in the alternative, Debtor claims he has rebutted the presumption of delivery, and thus the court should deem McAlpin's claim untimely. He claims that McAlpin has not testified that he personally placed the proof of claim and cover letter in an envelope addressed to the clerk, nor that he personally deposited the claim in the mail. He also argues that the failure of McAlpin's "tickler" system indicates the claim was never mailed, and points out that the copy of the claim retained by McAlpin is not signed, whereas the claim actually filed on March 21st is signed. Finally, Debtor desires a continuance to provide a declaration from the Clerk of the Court that the Clerk's office lacks any record of receipt of the proofs of claim.

Mindful that the presumption is not irrebuttable, the court nonetheless requires something more substantial than the evidence offered by the Debtor to overcome the inference of receipt arising from McAlpin's evidence that he mailed the proof of claim. *Nunley v. City of Los Angeles,* 52 F.3d at 796. As an initial matter, McAlpin did in fact declare that he mailed the proof of claim to the bankruptcy court. Even had he not, testimony to that effect is not necessary to invoke the mailbox presumption. In the *Nimz* case, it was enough that the counsel testified to initiating the normal mailing procedures even though no individual specifically testified to mailing the claim. *Id.* at 178. The failure of McAlpin's "tickler" system is understandable given that he received the Debtor's Plan Summary listing his claim in full a few days after sending in the proof of claim. Nor is the fact that McAlpin's copy of the proof remained unsigned significant; it is common practice to retain unsigned duplicates of original correspondence and other documents. Finally, the court denies the Debtor's request for a continuance. The

Debtor himself admits that "having the Clerk of the Court or his staff testify that they have no record of receipt ... seems no different than Mr. McAlpin's admission that his process server could not find any evidence of the proof of claim when she checked the Bankruptcy Court's file." No one disputes the fact that the bankruptcy files do not reflect a proof of claim. But the court holds that fact alone does not overcome the inference of receipt. *Id.,* at 796–797; *Cf., Jones v. United States,* 226 F.2d at 27; *In re De la Cruz,* 176 B.R. 19, 22 (9th Cir. BAP 1994).

In short, the presumption applies and the Debtor failed to overcome the inference of receipt. But the court limits its holding to the facts of this case and repeats, here, the statement of the Ninth Circuit when applying the mailbox presumption in *Jones v. United States:*

"All the equities in this case are with appellants, and we are not unmindful of the adage that hard cases are apt to make bad law. But equities aside, we are of the opinion that the conceded facts require a holding in appellants' favor. Arguments of policy are advanced to the effect that such a holding will encourage the making of fraudulent or fictitious claims.... Considerations of policy have not been absent from our minds in considering the appeal, but we think the fears expressed are not really warranted. The case presented appears to be in a class by itself."

*Id.,* 226 F.2d at 28. The claim is allowed.

## CONCLUSION

Where, as here, the plan already lists the claim presumed received, the plan provides for 100 percent payment to all creditors, the presumption will work no prejudice to either the debtor or any other creditor, and the aggrieved creditor's diligence renders the

to Rule 5(e), Judge Smalkin stated: "No evidence of the alleged March 4 filing appears on the Court's docket, which is the official index of filed papers ordained in Fed.R.Civ.P. 79(a). Nevertheless, it is possible that a filing might have been made, as defined in Fed.R.Civ.P. 5(e), even though the docket sheet does not reflect that filing. Given chronic understaffing of the Clerk's Office in this District, given the advent of computer-aided docketing with its concomitant "effi-

ciency," and given human error, it is conceivable that papers filed with the Clerk's Office under Rule 5(e) might nonetheless fall into a Bermuda Triangle somewhere between their receipt and a judge's chambers, a misfortune that should not affect the substantial rights of litigants who have indeed filed under Rule 5(e)." *U.S. ex rel. Siller v. Becton Dickinson & Co.,* 813 F.Supp. 410 (D.Md.1993), *rev'd on other grounds,* 21 F.3d 1339 (4th Cir.1994). This court agrees.

lateness of the claim *de minimis,* the court holds that the common law "mailbox presumption" applies to the filing of a proof of claim in a chapter 13 case. McAlpin properly invoked the presumption. The Debtor failed to refute the inference of receipt. Consequently, the court will allow the claim as timely filed. The foregoing shall constitute this court's findings of fact and conclusions of law. An appropriate order shall issue.