**In re EAST COAST BROKERS AND PACKERS, INC., Debtors.**

**GONZALES PACKING COMPANY, Plaintiff–Appellant,**

v.

**EAST COAST BROKERS AND PACKERS, INC., Defendants–Appellees.**

No. 91–3972.

United States Court of Appeals, Eleventh Circuit.

June 5, 1992.

Robert Wade Wetherington, Gibbons, Smith, Cohn & Arnett, Tampa, Fla., for plaintiff-appellant.

Scott Alan Stichter, Stichter, Riedel, Blain & Prosser, Tampa, Fla., for defendants-appellees, debtors.

Before FAY and BIRCH, Circuit Judges, and DYER, Senior Circuit Judge.

DYER, Senior Circuit Judge:

The sole issue before us in this appeal is whether the bankruptcy court applied the proper legal standard in finding that the evidence of appellant, Gonzales Packing Company, was not sufficient to raise a presumption of mailing of a notice of intent to preserve trust benefits against East Coast Brokers & Packers, Inc., pursuant to the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. § 499e(c). The district court affirmed the judgment of the bankruptcy court which denied appellant's motion for relief from the automatic stay and turnover of property. 134 B.R. 41. We hold that the evidence presented by Gonzales Packing Company was sufficient to raise the presumption of mailing to establish receipt of the trust notices by the Chapter 11 debtor East Coast Brokers & Packers, Inc. Accordingly, we reverse and remand for further proceedings, for enforcement of appellant's claim.

## BACKGROUND

Gonzales Packing Company ("Gonzales") and East Coast Brokers & Packers, Inc. ("East Coast") are both in the business of growing, packing and shipping tomatoes. On June 2, 1989, East Coast filed for protection to reorganize its business under Chapter 11 of the Bankruptcy Code. East Coast had previously complained to Gonzales about the quality of several shipments of tomatoes and had refused to pay Gonzales. In the bankruptcy proceeding, Gonzales filed a motion for relief from stay and for turnover of property allegedly not part of debtor's estate.

Gonzales' motion was based upon seller's rights asserted pursuant to the Perishable Agricultural Commodities Act. 7 U.S.C. §§ 499a–499s (1988). The amended § 499e(c) provides in part:

(2) Perishable agricultural commodities received by a commission merchant, dealer, or broker in all transactions, and all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products, shall be held by such commission merchant, dealer, or broker in trust for benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction, until full payment of the sums owing in connection with such transaction have been received by such unpaid suppliers, sellers or agents ...

(3) The unpaid supplier, seller, or agent shall lose the benefit of such trust unless such person has given written notice of intent to preserve the benefits of the trust to the commissioned merchant, dealer, or broker and has filed such notice with the Secretary within thirty calendar days (i) after expiration of the time prescribed by which payment must be made, as set forth in regulations issued by the Secretary, (ii) after expiration of such other time by which payment must be made, as the parties have expressly agreed to in writing before entering into the transaction, or (iii) after the time the supplier, seller, or agent has received notice that the payment time instrument promptly presented for payment has been dishonored. ...

The notification requirements for a seller to perfect an interest in PACA trust receipts are set forth in 7 C.F.R. § 46.46(g):

(g)(2) Timely filing of a notice of intent to preserve trust benefits by a trust beneficiary will be considered to have been made if written notice is given to the debtor and filed with the Secretary by delivery at the headquarters office or a regional office of the PACA Branch of Fruit and Vegetable Division, Agricultural Marketing Service, within 30 days after default. ...

The Bankruptcy Court for the Middle District of Florida heard the testimony of a representative of Gonzales regarding the office procedure for preparing and mailing trust notices to customers. The debtor, through the testimony of its president and another officer, denied receipt of the trust notices. However, the debtor received all

of the invoices sent by Gonzales to its address in Plant City, Florida, which was also relied upon by Gonzales for mailing the PACA trust notices to the debtor. The Department of Agriculture received copies of these PACA notices, showing the accurate address of East Coast used on the original notices.

The bankruptcy court found that the debtor did not receive notice from Gonzales of intent to preserve trust benefits. Therefore, the court denied Gonzales the enhanced protection under PACA which is afforded to agricultural sellers for wrongfully rejected shipments.[1] Gonzales claimed trust rights in the amount of $45,148. The bankruptcy court entered Findings of Fact, Conclusions of Law, and Memorandum Opinion denying Gonzales' motion, and denied Gonzales' motion for a new trial.

The matter was appealed to the district court. The court affirmed the bankruptcy court judgment, holding, as a matter of law, that appellant failed to sufficiently establish the elements necessary to raise the presumption of mailing. This appeal followed.

## DISCUSSION

■ The presumption of receipt of properly mailed documents is accepted by both the Florida Supreme Court and the United States Supreme Court, and may be utilized in this case. *See Brown v. Giffen Industries, Inc.*, 281 So.2d 897 (Fla.1973) and *Hagner v. United States*, 285 U.S. 427, 52 S.Ct. 417, 76 L.Ed. 861 (1932). The district court specified the elements necessary to show proper mailing: (1) the document was properly addressed; (2) the document was stamped; and (3) the document was mailed.

The testimony of Gonzales' general manager, Mr. Horwath, responding to a series of questions with respect to the mechanics of mailing notices by Gonzales' employees, led the district court to conclude that "Mr. Horwath never established what the office policy was with regard to mailing Notices

to customers." In part, the evidence showed that Mr. Horwath initiated the procedure to give notice to customers by giving instructions to his office staff, who had the responsibility in the normal practice to follow the instructions, and they did so in this instance. The error of the bankruptcy court was to consider only the evidence of Mr. Horwath's lack of firsthand involvement in the mechanics of addressing, stamping and mailing notices.

■ In order to raise the presumption of mailing, the evidence must consist of more than unsupported conclusory statements of an individual based on his assumption of how mail was handled in the normal course of business in his office. *See Leasing Assoc., Inc. v. Slaughter & Son, Inc.*, 450 F.2d 174, 178 (8th Cir.1971) (no description of office practice).

■ Rather than unsupported conclusory statements, in Gonzales' case certified copies of notices received by PACA were made part of the record and specific office procedures were explained. The following testimony of Mr. Horwath establishes the significance of this evidence:

THE COURT: Do you have any system of which you make sure that the person you sold them to get a copy of this?

THE WITNESS: It's always when they make them out for PACA they send them to the receiver at the same time. They make a photo copy and it goes to the receiver.

. . . . .

Q With the PACA trust notice to go back to them, you would make the decision on who to file?

A Right.

Q And the girls in the office would carry out the rest?

A Right.

Q Preparing the notice?

A Sending out the notice?

A Right.

---

1. The court's finding of East Coast's wrongful rejection of the shipments of tomatoes has never been presented as an issue for appellate review. The court found East Coast did not meet the burden of proof to establish a defect in the quality of the tomatoes.

Q It's—so you have no idea if the notice was sent out?

A If they were sent on to PACA they were sent to the receiver. If you look at the top of the notice it all designed on handle [sic] a window envelope. There's no complications in sending it.

Q But you don't have anything in your file to indicate that it was received?

A If there's a copy in the file it was sent.

Q But you don't know that. You don't know. Just establishing the general office practice?

A What do you mean?

Q You can testify just to the general office practice; you were never involved in the process of sending out—

A I'm not involved in writing them out and putting them in the mail, but if they're sent to the PACA, they're sent also to the receiver.

Q You have no idea whether the practice is followed in each occasion?

A The practice is the same.

Q You have no idea whether it was followed or not?

A It was followed because it's the same.

The facts of this case are clearly distinguishable from *Consolidated Marketing, Inc. v. Marvin Properties, Inc. (In re Marvin Properties, Inc.)*, 854 F.2d 1183 (9th Cir.1988), cited by appellee, which also involved PACA trust benefits. In *Marvin Properties*, the fact was undisputed that the seller, Consolidated, did *not* send a notice to the debtor, although it had sent a notice to the Secretary of Agriculture. *Id.* at 1184. That case established that the applicable statutory provision clearly requires the seller to give written notice directly to the buyer. *Id.* at 1186. We do not disagree, nor do we intend to diminish the evidentiary standard by which such notice must be proved.

## CONCLUSION

We conclude that had the bankruptcy court considered all of the evidence and applied the proper standard, it would have to find that the presumption of mailing was raised in favor of appellant to assert its rights to trust benefits under PACA.

We reverse the order of the district court in this appeal from the bankruptcy court, and remand the case for further proceedings consistent with this opinion.

REVERSED and REMANDED.