[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 25, 2002
THOMAS K. KAHN
CLERK

No. 00-13222

D. C. Docket No. 99-14363 CV-KMM

CHARLES BARNETT,

Plaintiff-Appellant,

versus

OKEECHOBEE HOSPITAL
d.b.a. Raulerson Hospital,

Defendant-Appellee,

BERNARD KRUSZEL, M.D.,
DEPARTMENT OF VETERANS AFFAIRS,
an agency of the United States of America,

Defendants-Appellees.

Appeal from the United States District Court
for the Southern District of Florida

**(February 25, 2002)**

Before TJOFLAT and WILSON, Circuit Judges, and RESTANI*, Judge.

---

*Honorable Jane A. Restani, Judge, U.S. court of International Trade, sitting by designation.

TJOFLAT, Circuit Judge:

In this case, Charles Barnett sued the U.S. Department of Veterans Affairs (the "VA") for medical malpractice under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671-2680 (1994).[1] The district court dismissed Barnett's complaint, concluding that Barnett failed to comply with the notice requirements of 28 U.S.C. § 2675(a). In this appeal, he challenges the court's conclusion. We reverse.

I.

---

[1] In his complaint, Barnett also sued Okeechobee Hospital d/b/a Raulerson Hospital ("Okeechobee") and Dr. Bernard Kruskel. In suing these defendants, Barnett invoked the district court's supplemental jurisdiction under 28 U.S.C. § 1367 (1994).

On August 28, 1998, Scott Leeds, counsel for Charles Barnett, sent a letter by certified mail to "Department of Veterans Affairs, Office of Regional Counsel," expressing Barnett's intent "to initiate negligence litigation against [the] Veterans Administration Medical Center of Miami" for allegedly negligent treatment in July 1997 that led to the amputation of Barnett's lower right leg.[2]  Leeds indicated in his letter that it was being sent "pursuant to the requirements of Florida Statute § 766.106 and Rule 1.650 of the Florida Rules of Civil Procedure."  In a response letter dated September 1, 1998, Steve McCormack, a staff attorney with the Office of Regional Counsel, informed Leeds, however, that "any and all claims of negligence involving medical care or treatment provided by employees of the Department of Veterans Affairs (VA), part of the executive branch of the United

---

[2] Barnett alleges that on July 23, 1997, he went to Okeechobee Hospital, where he was treated by Dr. Bernard Kruskel.  Diagnostic tests indicated that Barnett, who complained of overall weakness, had a grossly elevated BUN/Creatinine ratio, and Dr. Kruskel ordered that Barnett receive one liter of intravenous fluid. According to Barnett, the treatment was inadequate, and he suffered from diminished mental status and cognitive function due to dehydration and renal impairment when he was released from Okeechobee on July 27.  Soon after his release and allegedly due to his diminished mental status, Barnett was struck by a truck.  He was treated at the VA's Veteran Administration Medical Center (VAMC) in Miami for his injuries, including a fracture in his left leg.  Barnett alleges that the VAMC's doctors failed to diagnose or appreciate the significance of an infection that developed due to the fracture, and as a result, his leg needed to be amputated.

States government, are governed by the Federal Tort Claims Act (FTCA) rather than state law." Consequently, with his letter, McCormack enclosed a Standard Form 95 ("SF95") – which he described as "the appropriate method of filing an administrative tort claim against the VA" – with his letter.

Barnett filled out the SF95 and mailed it, along with a cover letter from Leeds dated September 8, 1998, to "Department of Veteran Affairs, VA Medical Center" using a postage-paid "business reply mail" envelope that McCormack had mailed to Leeds along with the SF95. Then, in October 1999 – over a year after the SF95 was mailed – Barnett filed a complaint in the Circuit Court of Okeechobee County, Florida against Okeechobee Hospital, Dr. Bernard Kruskel, and the VA, in which he certified that he had "complied fully with all of the requirements of the Federal Tort Claims Act vis-a-vis Defendant VA prior to filing this action." The case was removed to the district court on November 19, 1999.

On January 14, 2000, the VA filed a motion to dismiss, in which it asserted first, that "[a] tort claim against the United States is barred unless an administrative claim, in writing, was presented to the appropriate agency within two years of the date the claim accrued," and second, that Barnett failed to file such a claim. As support for the latter assertion, the VA submitted affidavits from K. Sue Meyer, the VA's Regional Counsel in Bay Pines, Florida, and McCormack and Margaret

4

Adams, two members of her staff. All three claimed that, other than the initial letter Leeds mailed to the Office of Regional Counsel on August 28, 1998, their office never received any other written communication from Barnett regarding an FTCA administrative claim – including the SF95 he purportedly mailed in September 1998. Consequently, the VA asked the district court to dismiss Barnett's suit for lack of subject matter jurisdiction.

On April 18, 2000, the district court granted the VA's motion and dismissed Barnett's complaint without prejudice.[3] The court "granted [Barnett] ten (10) days in which to file an Amended Complaint together with documentation sufficient to support a finding that the appropriate notification of claim and sum certain was mailed to and received by the appropriate federal agency within the two year statute of limitations as required by 28 U.S.C. § 2675(a)." Barnett filed an amended complaint on April 28, 2000, in which he once again contended that he "complied with all of the conditions precedent and notice requirements set forth in the Federal Tort Claims Act necessary to bring this cause of action against Defendant VA." He posited two separate theories for this conclusion: first, that Leeds' August 28, 1998 Notice of Intent letter to the VA sufficed as administrative

---

[3] Once the court dismissed the claims against the VA, it was free to decline jurisdiction over the remaining state claims. See 28 U.S.C. § 1367(c)(3).

notice of his claim under 28 U.S.C. § 2675(a), and second, that Barnett "did send to Defendant VA a completed form 95 prior to the expiration of the two year limitation." To support this second contention, Barnett attached to his amended complaint the completed SF95 that he mailed, dated September 14, 1998; a cover letter that Leeds included with the SF95, dated September 8, 1998; and a copy of the postage-paid "business reply mail" envelope that Barnett used to mail the SF95.[4]

On May 19, 2000, the VA moved to dismiss the amended complaint for lack of subject matter jurisdiction. The VA argued that Barnett, in his amended complaint, "merely rel[ied] on the same arguments [for subject matter jurisdiction] previously stated in his Memorandum of Law in opposition to [its] original Motion to Dismiss the Complaint." The district court agreed. It found that Barnett "failed in his August 31, 1998 'Notice of Intent to Initiate Litigation' to place a value on his claim and to provide sufficient information from which the VA could establish the value of his claim" and "failed to attach any new documentation to his Amended Complaint to verify that a SF95 was ever actually mailed to and received by the [VA]." Consequently, on June 6, 2000, the district court dismissed

_____

[4] Barnett also attached to the amended complaint the August 28, 1998 Notice of Intent letter; his certified mail and return service receipts for the August 28 letter; and McCormack's September 1 response to the August 28 letter.

Barnett's FTCA claim against the VA and remanded his remaining state law claims against Okeechobee Hospital and Dr. Kruszel to the state circuit court.

## II.

As we have noted elsewhere, "[t]he FTCA is a specific, congressional exception to the general rule of sovereign immunity [that] allows the government to be sued by certain parties under certain circumstances for particular tortious acts committed by employees of the government." Suarez v. United States, 22 F.3d 1064, 1065 (11th Cir. 1994). As a result, courts must be careful to observe scrupulously the circumstances and conditions of this waiver. See id. One such condition, set forth in 28 U.S.C. § 2675(a), requires that the administrative agency being sued receive notice and an opportunity to resolve the dispute without litigation:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.

7

28 U.S.C. § 2675(a). If the claim is not presented in writing to the agency within two years after it accrues, it is forever barred. 28 U.S.C. § 2401(b).

A claim is deemed to be presented "when a Federal agency receives from a claimant, his duly authorized agent or legal representative, an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain for injury to or loss of property, personal injury, or death alleged to have occurred by reason of the accident." 28 C.F.R. § 14.2 (2001).[5] Accordingly, Barnett must show either that his Notice of Intent letter met these two requirements – written notification and a claim for a sum certain – or that the VA received the SF95 he filled out. As we shall discuss, we find that Barnett fulfilled the prerequisites of 28 U.S.C. § 2675 via the latter approach – specifically,

---

[5] The United States Attorney General is empowered by 28 U.S.C. § 2672 to prescribe regulations for the administration of the FTCA. See 28 U.S.C. § 2672 ("The head of each Federal agency or his designee, in accordance with regulations prescribed by the Attorney General, may consider, ascertain, adjust, determine, compromise, and settle any claim for money damages against the United States for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the agency while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred . . . .") (emphasis added).

by creating a presumption, which the VA has failed to rebut, that the agency received his completed SF95.[6]

## III.

## A.

We cannot review the actions taken by Barnett to satisfy 28 U.S.C. § 2675 with a tabula rasa: We must first consider what deference, if any, we must give the order issued by the district court. As an initial step towards determining the order's weight, it is important to note that the district court must have dismissed Barnett's amended complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, and not pursuant to Rule 12(b)(6), because the administrative notice requirement of 28 U.S.C. § 2765 "is jurisdictional and cannot be waived." Lykins v. Pointer Inc., 725 F.2d 645, 646 (11th Cir. 1984); Employees Welfare Comm. v. Daws, 599 F.2d 1375, 1378 (5th Cir. 1979). This distinction is important. When a defendant moves under 12(b)(6) to dismiss a complaint for

---

[6] For this reason, we find it unnecessary to discuss whether the Notice of Intent letter Leeds mailed to the VA on August 28, 1998, sufficed to meet the requirements of 28 C.F.R. § 14.2.

failure to state a claim, the plaintiff is safeguarded by a presumption that the allegations in his complaint are true. A plaintiff does not necessarily have this same protection from a 12(b)(1) motion.

If the 12(b)(1) motion represents a facial attack on jurisdiction – that is, the facts as stated supposedly do not provide cause for federal jurisdiction – then the facts alleged by the plaintiff are given the same presumption of truthfulness as they would receive under a 12(b)(6) motion. See Williamson v. Tucker, 645 F.2d 404, 412 (5th Cir. 1981). If, however, the 12(b)(1) motion raises a factual attack on jurisdiction – the very facts providing cause for jurisdiction are themselves challenged – then no such presumption exists and the district court is allowed to consider the facts as it sees fit. In essence, the district court conducts a bench trial on the facts that give rise to its subject matter jurisdiction. Consequently, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." Id. at 413 (quoting Mortensen v. First Fed. Sav. and Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)).

In the present case, the VA challenged the district court's jurisdiction from both a facial and a factual standpoint. It claimed that Barnett could not facially "present" his claim by simply asserting that he mailed a completed SF95 to its

Office of Regional Counsel; according to the VA, only actual receipt of the SF95 by that office legally sufficed as presentation of the claim. Moreover, the VA also disputed key underlying facts, specifically whether Barnett actually mailed a completed SF95 to the VA and whether the VA received it.

Because of the mixed nature of the VA's jurisdictional attack, we must use two different standards to review the district court's order on subject matter jurisdiction. When the court confronted the VA's facial jurisdictional challenge and decided that "a claim is 'presented' when it is received by a federal agency . . . [so] there must be evidence of actual receipt," it was merely construing law, so we review the court's decision de novo. On the other hand, when the court held that Barnett "failed to . . . verify that a SF 95 was ever actually mailed to and received by the [VA]," it was issuing a factual finding, which we can only overturn if it is "clearly erroneous." See Lawrence v. Dunbar, 919 F.2d 1525, 1530 (11th Cir. 1990).

B.

1.

As we have just noted, we can only overturn the district court's factual finding that Barnett did not mail a completed SF95 to the VA if it is clearly erroneous. In other words, we should only reverse if "we are left with a definite and firm conviction that a mistake has been committed." United States v. Hogan, 986 F.2d 1364, 1372 (11th Cir. 1993) (quoting United States v. Roy, 869 F.2d 1427, 1429 (11th Cir. 1989), cert. denied, 493 U.S. 818, 110 S. Ct. 72, 107 L. Ed. 2d 38 (1989)). Here, however, we believe that such a mistake has occurred.

In his amended complaint, Barnett asserted that he mailed a completed SF95 to the VA and attached copies of it, the accompanying cover letter, and a copy of the postage-paid "business reply mail" envelope in which he allegedly mailed it. While Barnett's statement and supporting documentation does not provide conclusive proof that he mailed a completed SF95 to the VA – as, perhaps, a certified mail receipt would provide – it does raise an inference that he did so. Admittedly, the district court was under no obligation to assume that Barnett's claims were presumptively true. There is, however, no evidence before the court that suggests that they are false and thus that the inference drawn from them – that he mailed a completed SF95 to the VA – is inaccurate.

To rebut Barnett's claim that he mailed a SF95 to its Office of Regional Counsel, the VA submitted statements by Meyer, McCormack, and Adams that the

12

VA never received an SF95 from Barnett.  Assuming that they are reliable, these comments, at most, indicate that the SF95 did not reach the VA's Office of Regional Counsel.[7]  They provide no proof whatsoever that Barnett did not deposit the completed SF95 in the mail.  Consequently, there was no reason for the district court to conclude that Barnett did not mail the completed SF95 to the VA, and we therefore find this conclusion to be "clearly erroneous."

2.

Whether Barnett actually mailed the completed SF95 to the VA may seem irrelevant in light of the district court's conclusion that actual receipt of the SF95 by the VA was the only fact that was material.  Specifically, the district court's ruling on the matter – which, as aforementioned, we review de novo – was that "a claim is 'presented' when it is received by a federal agency."  Therefore, in the view of the district court, "[m]ailing alone is not enough; there must be evidence of actual receipt."  While we agree with the fundamental premise that a claim is

---

[7] As we discuss in Part III.A.3, infra, the statements made by Meyer and McCormack are actually hearsay and provide no proof as to whether or not the VA received Barnett's SF95.

13

presented upon its receipt, we cannot go so far as to say that affirmative evidence of such receipt is required.

As we noted in a previous case, <u>Konst v. Florida E. Coast Ry. Co.</u>, 71 F.3d 850 (11th Cir. 1996), "[t]he common law has long recognized a rebuttable presumption that an item properly mailed was received by the addressee." <u>Id.</u> at 857.  In <u>Konst</u>, we extended this common law principle to claims filed against a common carrier pursuant to 49 C.F.R. § 1005;[8] that is, we held that Konst, who allegedly mailed such a claim to Florida East Coast Railway Company, was entitled to a presumption that the railway company had received the claim.  <u>Id.</u> at 855.  We see no reason why we should not act similarly in the case at hand and allow Barnett the benefit of this "traditional means of weighing evidence in order to determine whether receipt occurred."  <u>Id.</u> at 853.

---

[8] 49 C.F.R. § 1005.2(a) (2001) provides:
A claim for loss or damage to baggage or for loss, damage, injury, or delay to cargo, shall not be voluntarily paid by a carrier unless filed . . . with the receiving or delivering carrier, or carrier issuing the bill of lading, receipt, ticket, or baggage check, or carrier on whose line the alleged loss, damage, injury, or delay occurred, within the specified time limits applicable thereto and as otherwise may be required by law, the terms of the bill of lading or other contract of carriage, and all tariff provisions applicable thereto.

14

Admittedly, unlike the instant case, Konst did not involve the filing of documents with a government agency. This distinction was noted in Konst: in dicta, it was mentioned that "[t]here is a presumption that officers of the government perform their duties," and we cited cases like Chrysler Motors Corporation v. Schneiderman, 940 F.2d 911(3d Cir. 1991), and Smith v. Fidelty & Casualty Co., 261 F.2d 460 (5th Cir. 1958), where the rebuttable presumption of receipt was not applied to filing requirements. Knost, 71 F.3d at 854-55. There is a crucial difference between those cases and the one currently before the court. In Chrysler Motor Corporation and Smith, the plaintiffs filed claims with courts or third-party governmental agencies, who were not otherwise involved in the litigation. See Chrysler Motor Corp., 940 F.2d at 912-13 (reviewing whether the clerk of the bankruptcy court received a claim Chrysler allegedly filed against Scheniderman); Smith, 261 F.2d at 461 (considering whether Smith filed a claim with the Texas Industrial Accident Board, as required by state law.) Consequently, "the governmental entities in the . . . cases had no apparent pecuniary interest in denying that they received the documents allegedly filed with them." Konst, 71 F.3d at 855. Here, however, the government agency with which Barnett filed his claim – the VA – is the defendant. As a result, it has a strong interest in denying that it received Barnett's SF95 and having his suit dismissed.

15

All that we have said should not imply that we think that the VA lied to the district court as to whether it received Barnett's SF95. Rather, we simply believe that the VA should not be accorded any special presumption of believability because it is a branch of the United States government and should be treated no differently than a private defendant like the one in Konst. In Konst, after we determined that 49 C.F.R. § 1005 "contemplate[d] receipt as the trigger for processing a claim," we ultimately held that the presumption of receipt should apply to claims filed under that federal regulation. Id. at 853. Likewise, we hold today that the same presumption should apply to administrative claims made pursuant to 28 C.F.R. § 14.2, which promulgates that an FTCA claim is only "presented" in accordance with 28 U.S.C. § 2675 when the appropriate Federal agency "receives" it from the claimant.

In the instant case, Barnett only needed to demonstrate three facts to create a presumption that the VA received his completed SF95: "(1) the document was properly addressed; (2) the document was stamped; and (3) the document was mailed." Gonzales Packing Co. v. East Coast Brokers and Packers, Inc. (In re East Coast Brokers and Packers, Inc.), 961 F.2d 1543, 1545 (11th Cir. 1992). As we discussed in Part III.B.1, Barnett has provided uncontradicted evidence that he mailed the SF95. Moreover, he allegedly used the "business reply mail" envelope

16

that McCormack sent to him, so we can assume that it was properly addressed. The envelope did not need to be stamped, because, as was clearly marked on it, the "postage [would] be paid by [the] Department of Veteran Affairs." In sum, Barnett established the three elements necessary to create a presumption of receipt, and we therefore must presume that the VA received his completed SF95.

3.

Having determined both that Barnett mailed a completed SF95 to the VA and that this fact raises a presumption that the VA received the SF95, we now must consider whether the VA has rebutted this presumption. Even though Barnett's assertions that he mailed the SF95 to the VA have not been controverted, the VA can still put forth evidence to overcome the presumption that it was received. See Bailey v. United States, 642 F.2d 344, 347 n.1 (9th Cir. 1981) ("[T]he presumption [that the plaintiff's FTCA claim was received], assuming that it exists, [was] rebutted by proof of non-receipt"). After all, the presumption of receipt is "not a conclusive presumption of law, but a mere inference of fact, founded on the probability that the officers of the government will do their duty and the usual course of business; and, when it is opposed by evidence that the letters never were

17

received, must be weighed with all the other circumstances of the case . . . in determining the question whether the letters were actually received or not." Rosenthal v. Walker, 111 U.S. 185, 193-94, 4 S. Ct. 382, 386, 28 L. Ed. 395 (1884) (citation omitted).

The VA contends that it submitted such evidence through the declarations of Regional Counsel K. Sue Meyer and Steve McCormack and Margaret Adams, staff attorneys in her office.  Meyer, in her declaration, averred that

> A review of the Regional Counsel records indicates the Office of Regional Counsel, Bay Pines, Florida, received a "Notice of Intent to Initiate Litigation" letter on August 31, 1998. . . . The Office of Regional Counsel has not received any other written communication from plaintiff or plaintiff's attorney regarding an FTCA administrative tort claim.

Adams also conducted a review of the files for the Medical Care Cost Recovery Program (MCCR), which covers cases referred to the Office of Regional Counsel from medical centers in Florida such as the VAMC, and asserts that Barnett's SF95 was not found in the file.  McCormack  did not indicate that he performed any similar review, but nevertheless asserted that "[t]he Miami division of the office of Regional Counsel never received the completed Standard Form 95 [from Barnett], as requested in the September 1, 1998 letter."  The VA argued and the district court accepted that these statements were conclusive proof that the VA never received

18

Barnett's completed SF95. We disagree and find the district court's decision to be clear error.

Pursuant to 28 C.F.R. § 14.2, a federal agency must receive an SF95 or other written notification from a claimant before the claimant can proceed against that agency. To comply with this regulation, Barnett mailed a completed SF95 to "Department of Veterans Affairs, VA Medical Center" in an envelope, which McCormack sent to him and a copy of which Barnett attached to his amended complaint. In other words, the SF95 was mailed – in compliance with the pertinent federal regulations – to an administrative <u>office</u> – specifically, the VA's Office of Regional Counsel – and not to a <u>person</u>. This distinction is crucial. If a court needed to resolve whether an individual person received an item mailed to him or her, then it need only seek testimony from that person as to whether he or she had received the item. Determining whether an office receives an item mailed to it is another, more complicated matter altogether. A court could not rely on the bare assertion of one member of the office that the mail was not received, since the mail might have been received by another. The court would need testimony about the office's practice and procedure for receiving and filing incoming mail – that is, circumstantial evidence – in order to draw an inference that the mail was or was not received.

For this reason, the declarations of Meyer, McCormack, and Adams are deficient in showing that Barnett's SF95 was not received by the VA. Meyer and Adams based their assertions that their office had not received Barnett's SF95 on "reviews" of office records. Just because the SF95 was not among those records, however, does not mean that it was not received by the office. It could have simply been misplaced after receipt or even misfiled. As other courts have noted, a party's failure to uncover an item, which it was presumed to have received, does not mean that it never received the item and does not rebut the presumption of delivery. See In re Nimz Transp., Inc., 505 F.2d 177, 179 (7th Cir. 1974) (holding, in a case where petitioners alleged that they mailed wage claims to the clerk of the district court, that "the fact that the clerk's files did not contain the proof of claims" was "by itself insufficient to rebut the presumption of receipt"); Jones v. United States, 226 F.2d 24, 27 (9th Cir. 1955) ("The showing that a search of the pertinent files in the [Tax Collector's] office revealed no record of the claims having been filed is a purely negative circumstance, insufficient, in our opinion, to rebut the presumption of delivery. It is notorious that returns and other papers have in the past been mislaid or lost in the offices of many collectors.") Accordingly, the testimony of Meyer and Adams does not rebut the presumption that the VA received the completed SF95 Barnett mailed to its regional office.

20

Of course, Meyer and Adams could each claim that they are relying on some other source of information for their assertions that the office never received Barnett's SF95.  Then, however, their statements would suffer from the same deficiencies as that of McCormack, who asserted that the office "never received the completed Standard Form 95" without citing any basis for such knowledge.  If Meyer, Adams, or McCormack relied on personal knowledge, for example, of office procedures for processing received mail, they gave no indication or explanation so the district court could evaluate their thinking.[9]  On the other hand, if they relied on statements from others in their office, then their comments were merely hearsay and should not have been considered by the district court.  In either case, their declarations do nothing to rebut the presumption that the VA received Barnett's SF95.  Furthermore, since their statements were the only rebuttal evidence the VA provided, we find that the presumption holds.

_____

[9] In her declaration, Adams said that she had "primary responsibility for the Medical Care Cost Recovery Progam  (MCCR) involving cases referred to the Office of Regional Counsel from all Medical centers in Florida including the [VAMC Miami]."  McCormack, in his declaration, noted that he had "primary responsibility for the processing and investigation of all administrative tort claims filed pursuant to the [FTCA] involving the VAMC Miami."  Neither of these roles necessarily indicates that either Adams or McCormack would have implicit knowledge of whether the Office of Regional Counsel received Barnett's SF95; they only show that they might have eventually reviewed the form, if it was not misplaced after receipt.

## IV.

In sum, Barnett has presented an uncontradicted claim that he mailed a completed SF95 to the VA. The SF95, mailed in a properly addressed and postage-paid envelope, is presumed to have been received by the VA's Office of Regional Counsel in Miami. The VA has provided no evidence that rebuts that presumption. Consequently, we must assume that the VA received the SF95 and that Barnett has conformed to the jurisdictional requirements contained within 28 U.S.C. § 2675 and 28 C.F.R. § 14.2 for bringing an action under the FTCA. The order of the district court is therefore REVERSED and the case is REMANDED for further action consistent with this opinion.

SO ORDERED.