**D.M. ROTHMAN & CO., INC.,** Havana Potato Corp., J.B.C. Produce, Inc., Jacobson Produce, Inc., Tomatoes, Inc., Lee–Loi Industry, Inc., Leef–Brandt Produce, Inc., Loi Potato Co., Inc., Megna Fruit, Inc., Trucco, Inc., Plaintiffs,

Square Produce, Inc., Costa & Harris, Inc., D'Arrigo Brothers Company of New York, Inc., E. Armata, Inc., Finest Fruit, Inc., Fireman Produce Exchange, Inc., G & B Produce, Inc., Craig–Ann Produce, Inc., H Schnell & Co., Inc., Hunts Point Tomato Co., Inc., Kleinman & Hochberg, Inc., Kornblum & Co., Inc., Krisp–Pak Sales Corp., L & K Tomatoes, Inc., Wishnatzki & Nathel, Inc., L & P Fruit, Corp., Vita–Wellbrock–Kearney, Inc., M & R Tomato Distributors; M. Striks & Son, Inc., Morris Okun, Inc., R & C Comunale, Rubin Bros. Co., Inc., Albee Tomato, Inc., M & R Trading Co., Inc., Plaintiffs–Appellants–Cross–Appellees,

v.

**KOREA COMMERCIAL BANK OF NEW YORK,** Defendant–Appellee–Cross–Appellant,

A.B. Shalom Produce, Young Ok Fruit & Groceries Corp., RNK Grocery, Inc., Ryung Cil Yi, doing business as RNK Produce, Defendants.

Nos. 03–7247(L), 03–7325(XAP).

United States Court of Appeals, Second Circuit.

Argued Oct. 8, 2003.

Decided June 6, 2005.

Leonard Kreinces, Kreinces & Rosenberg (Howard S. Rosenberg, on the brief), Westbury, NY, for Plaintiffs–Appellants–Cross–Appellees.

Christoph C. Heisenberg, Winston & Strawn, New York, NY, for Defendant–Appellee–Cross–Appellant.

Before: WALKER, Chief Judge, JACOBS and WESLEY, Circuit Judges.

JOHN M. WALKER, JR., Chief Judge.

This case presents the final installment in a trilogy of recent appeals involving the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. § 499a, *et seq.*, a statutory regime that gives growers and sellers of perishable produce priority interests in the assets of the brokers and dealers who purchase their goods on credit by imposing a statutory trust on the perishable goods and their proceeds. *See E. Armata, Inc. v. Korea Commercial Bank*, 367 F.3d 123 (2d Cir.2004); *Am. Banana Co. v. Republic Nat'l Bank*, 362 F.3d 33 (2d Cir.2004). Plaintiffs, sellers of perishable commodities, and defendant Korea Commercial Bank ("KCB") appeal and cross-appeal, respectively, the February 3, 2003 judgment of the United States District Court for the Southern District of New York (Barbara S. Jones, *District Judge*), issued following a five-day bench trial, in which the district court (1) dismissed certain plaintiffs for failure to establish timely statutory notice of their PACA claims; (2) found KCB liable for receipt of PACA funds in breach of trust; and (3) ordered KCB to pay damages to the remaining plaintiffs limited to the amount of PACA funds the PACA trustee withdrew during the breach period to pay non-PACA creditors. *See Albee Tomato Co., Inc. v. Korea Commercial Bank*, 282 F.Supp.2d 6, 23 n. 25 (S.D.N.Y. 2003) ("*Albee Tomato III*").

Our disposition of the present appeal necessarily awaited disposition of the two earlier cases, *American Banana* and *E. Armata*, which established dispositive precedent. For the following reasons, we affirm all of the district court's conclusions concerning PACA notice, vacate the district court's imposition of liability on KCB, and remand for reconsideration of KCB's liability in accordance with our holding in *E. Armata.*

## BACKGROUND

### I. PACA

Congress enacted PACA in order to provide growers and sellers of agricultural commodities with "a self-help tool ... enabl[ing] them to protect themselves against the abnormal risk of losses resulting from slow-pay and no-pay practices by buyers or receivers of fruits and vegetables." *Regulations Under the Perishable Agricultural Commodities Act; Addition of Provisions To Effect a Statutory Trust,* Final Rule, 49 Fed.Reg. 45735, *45737, 1984 WL 134664 (USDA Nov. 20, 1984) ("PACA Regs"). To accomplish this goal, PACA imposes a statutory trust ("PACA trust") on any perishable commodities or their derivatives "received by a commission merchant, dealer, or broker ['produce dealers' or 'PACA trustees'] ... and [on] any receivables or proceeds from the sale of such commodities or products for the benefit of all unpaid sellers, suppliers, and agents until full payment is made." *Id.;* *see* 7 U.S.C. § 499e(c); [1] *see also Am. Banana,* 362 F.3d at 36–38 (providing detailed discussion of PACA). A PACA trustee's primary duty is to

> maintain trust assets in a manner that such assets are freely available to satisfy outstanding obligations to sellers of perishable agricultural commodities. Any

---

1. PACA provides, in part:

 Perishable agricultural commodities received by a commission merchant, dealer, or broker ... and any receivables or proceeds from the sale of such commodities ... shall be held by such commission merchant, dealer, or broker in trust for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction, until full payment of the sums owing in connection with such transactions has been received ....

 7 U.S.C. § 499e(c).

act or omission which is inconsistent with this responsibility, including dissipation of trust assets, is unlawful and in violation of [PACA].

7 C.F.R. § 46.46(d)(1). PACA regulations define "dissipation" as "any act or failure to act which could result in the diversion of trust assets or which could prejudice or impair the ability of unpaid suppliers, sellers, or agents to recover money owed in connection with produce transactions." *Id.* § 46.46(a)(2).

 As beneficiaries of a PACA trust, growers and sellers of perishable agricultural commodities ("produce sellers" or "PACA beneficiaries") retain the "right to recover against [PACA trustees] superior to all creditors, including secured creditors." *Endico Potatoes, Inc. v. CIT Group/Factoring, Inc.,* 67 F.3d 1063 (2d Cir.1995).[2] Thus, PACA provides a means for produce sellers to protect themselves from "the abnormal risk of losses" inherent in the perishable commodities industry. *PACA Regs,* 49 Fed.Reg. at *45737.

 General trust law applies to PACA trusts unless such law directly conflicts with the PACA statute. *See Albee Tomato, Inc. v. A.B. Shalom Produce Corp.,* 155 F.3d 612, 615 (2d Cir.1998) ("*Albee Tomato II* "). One such conflict is that PACA "imposes a 'non-segregated floating trust' on [perishable] commodities and their derivatives, [which] permits the commingling of trust assets without defeating the trust." *See Endico Potatoes,* 67 F.3d at 1067. As a result,

> [t]rust assets are available for other uses by the [PACA trustee]. For example, trust assets may be used to pay other creditors. It is the [PACA trustee]'s responsibility ... to insure that it

has sufficient assets to assure prompt payment for produce and that any beneficiary under the trust will receive full payment, including sufficient assets to cover the value of disputed shipments.

*PACA Regs,* 49 Fed.Reg. at *45738.

## II. Facts

Plaintiffs' PACA claims arose from their dealings with A.B. Shalom ("Shalom"), a produce dealer subject to the trustee duties imposed by PACA, to whom plaintiffs had sold PACA commodities. In 1986, KCB extended a revolving line of credit to Shalom in the form of "overdraft privileges" on a checking account (the "KCB Account"). The parties do not dispute that Shalom made regular deposits into the KCB Account of monies that were derived from sales of produce and, therefore, that the KCB account was a trust account subject to the provisions of PACA. Shalom also regularly drew upon the KCB Account's credit line, which had a $150,000 limit during the relevant period, with the result that the KCB Account carried a perennially negative balance that was automatically reduced every time Shalom made a deposit of PACA trust funds. Although Shalom was apparently permitted to exceed the $150,000 credit limit at times, KCB often refused to honor checks drawn by Shalom that would exceed the limit and charged fees to the account for drawing upon insufficient funds. KCB also charged the account for deposited third-party checks that were dishonored and for interest accruing on Shalom's negative balances.

As of August 26, 1988, Shalom ceased making payments to its PACA beneficiaries, including plaintiffs, thereby initiating

---

**2.** "While the regulations do not prohibit a [produce dealer] from granting a secured interest in trust assets, they make it clear that the secured interest is secondary and specifi-

cally voidable in order to satisfy debts to unpaid [PACA beneficiaries] in perishable agricultural commodity transactions." *PACA Regs,* 49 Fed.Reg. at *45738.

the "Breach Period." Shalom's KCB account was not frozen, however, until January 1990, when KCB was served with the complaint in this case. The district court found that on the first day of the Breach Period, the KCB account carried a negative balance of approximately —$90,948,[3] see Albee Tomato III, 282 F.Supp.2d at 23 n. 25, reflecting the amount Shalom then owed KCB on its credit line. Shalom continued to deposit PACA trust funds during the Breach Period and to issue checks against those deposits to pay non-PACA creditors. By the time KCB froze Shalom's account in January 1990, Shalom allegedly owed the PACA-creditor plaintiffs a total of $890,249, and the balance in the KCB account was—151,127, id. at 9, 23 n. 25.

Because Shalom had become insolvent, plaintiffs filed this action against KCB, alleging that KCB's application of PACA-covered deposits to reduce Shalom's negative balance in its bank account during the Breach Period constituted receipt of trust funds in breach of the PACA trust. The district court initially granted summary judgment to KCB on the ground that, as a matter of law, KCB was a "bona fide purchaser" for value (a "BFP") of the deposited PACA funds. The district court found that KCB did not have actual notice that Shalom had breached its trust obligations and, further, that it could not be charged with constructive notice of the breach because KCB had regularly reviewed Shalom's financial data, upon which KCB had reasonably relied to conclude that Shalom was in good financial health. Albee Tomato, Inc. v. A.B. Shalom Produce Corp., No. 89 CIV. 01888(MJL), 1995 WL 766306 (S.D.N.Y. Dec 28, 1995) ("Albee Tomato I"). On appeal from that decision, we

reversed the grant of summary judgment and remanded for trial, holding that KCB had failed to establish that it was entitled to BFP status as a matter of law and that plaintiffs were similarly not entitled to summary judgment on the issue of KCB's liability. Albee Tomato II, 155 F.3d at 615.

Following remand and the death of the judge originally assigned to the case, the case was reassigned to District Judge Barbara Jones. After holding a five-day bench trial, Judge Jones issued a Memorandum and Order that (1) dismissed several plaintiffs from the case for failure to establish that they satisfied PACA's notice requirements, Albee Tomato III, 282 F.Supp.2d at 14; (2) rejected KCB's affirmative defense that it was a BFP, id. at 22; (3) rejected KCB's asserted equitable defenses of laches, unclean hands, and failure to mitigate damages, which KCB had argued were established by the plaintiffs' ten-month delay in serving the bank with notice of the complaint, id. at 23–24; and (4) assessed damages of $319,954.94 payable to the remaining plaintiffs based on " 'KCB['s] ... receipt of [PACA trust] funds that were eventually used by [Shalom] to pay non-PACA beneficiaries,' " id. at 23 (quoting the lower court decision in E. Armata, Inc. v. Korea Commercial Bank, 2002 WL 31834451, at *5 (S.D.N.Y.2002), rev'd by, 367 F.3d 123 (2d Cir.2004)). Judge Jones noted, however, that she had excluded from calculation "those [trust] deposits that automatically reduced Shalom's overdraft debt to KCB because the Bank actually extended approximately $60,000 to Shalom in additional credit, which it lost." Id.

On appeal, plaintiffs urge this court to affirm the imposition of liability against

---

**3.** The provenance of this figure is unclear. Our review of the relevant KCB account statement indicates that the opening balance on August 26, 1998 was only $69,979. [E 1497] We leave it to the district court to resolve this discrepancy on remand.

KCB, but challenge the district court's measure of damages as well as the dismissal of certain plaintiffs on notice grounds. KCB argues in its cross appeal that (1) none of the plaintiffs satisfied PACA's notice requirements; (2) the district court erred in holding KCB liable for the PACA trustee's breach of trust in paying non-PACA creditors; (3) even if liability was properly found, KCB established its affirmative defense of being a bona fide purchaser for value; and (4) there was inadequate evidentiary support for the district court's calculation of damages.

Our decision in *E. Armata* resolves the primary issue before us on this appeal: whether, and under what circumstances, a depository bank such as KCB may be held liable as a third-party transferee of PACA funds in breach of trust for a PACA trustee's deposit of PACA funds into a negatively balanced checking account. Accordingly, we apply the reasoning of *E. Armata* to the nearly identical facts of this case and address the parties' arguments with respect to statutory notice, which is the only issue unresolved by our prior decisions. For the reasons that follow, we affirm the district court's findings that certain plaintiffs satisfied PACA's notice requirements and that other plaintiffs did not. In accordance with our holding in *E. Armata*, however, we reverse the imposition of liability against KCB for the PACA trustee's payments to other non-PACA creditors, and we remand to the district court to consider (1) the amount of PACA funds KCB retained for itself, including as payment for service fees and interest charges; (2) whether such retention was commercially reasonable; and if not, (3) whether KCB can establish any defense to liability. In light of this holding, we do not reach the parties' challenges to the district court's calculation of damages or its rejection of KCB's defenses to liability.

## DISCUSSION

We review the district court's findings of fact following a bench trial for clear error and its conclusions of law *de novo*. *Am. Banana*, 362 F.3d at 40; *Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 193 (2d Cir.2003).

### I. *PACA's Notice–of–Claim Requirements*

Although a PACA trust is automatically established each time a broker or merchant purchases perishable commodities upon credit, a particular grower or seller of perishable commodities will not be entitled to PACA protection for any non-payment claims unless it perfects its claims within 40 days after the payment was due by sending a notice of intent to preserve PACA trust benefits to both the Department of Agriculture ("USDA") and the particular commodities broker alleged to have violated PACA. 7 U.S.C. § 499e(c)(3); *see also PACA Regs*, 49 Fed.Reg. at *45738 (stating that PACA notice requirements are "an absolute precondition to pursuing trust assets held by a [PACA trustee]").

While all of the plaintiffs in this case were able to demonstrate that timely notice for at least some claims had been sent to the USDA, none was able to produce record evidence that it had timely provided notice to Shalom. Instead, fourteen plaintiffs produced employees at trial who each testified about their employer's standard office procedures with respect to PACA notices. These witnesses asserted, in effect, that it was customary in their offices to mail notices more or less simultaneously to both the USDA and the implicated commodities broker. *See Albee Tomato III*, 282 F.Supp.2d at 12–13. The district court found that this testimony, which was cor-

roborated by certified copies of the USDA notices filed by each of the plaintiffs and by the testimony given by Shalom's principal, provided sufficient circumstantial evidence to establish that these fourteen plaintiffs had timely mailed notices to Shalom. Relying on our decision in *Meckel v. Continental Resources Co.*, 758 F.2d 811, 817 (2d Cir.1985), the district court then held that each of the fourteen plaintiffs that established that notice to Shalom had been timely mailed was entitled to a presumption of timely receipt of the mailed notices by Shalom. The district court further held, however, that KCB successfully rebutted the presumption with respect to one plaintiff, Hunts Point Tomato Co., by introducing a certified mail receipt demonstrating that Shalom had in fact received the notice late. *Albee Tomato III*, 282 F.Supp.2d at 13–14. No challenge is raised to this dismissal.

The district court dismissed eight other plaintiffs for failure to perfect their PACA rights on the ground that these plaintiffs had failed to produce any witnesses with first-hand knowledge of their standard office procedures. Although these plaintiffs had produced certified copies of their notices to the USDA, the district court held that these notices alone were insufficient to establish that timely notice had been given to Shalom, and that they were not sufficiently corroborated by the testimony of Shalom's principal because he could not specifically recall which notices he had received, when he received them, or whether they were timely served. *Id.* Finally, a tenth plaintiff, M & R Trading, was dismissed because the witness who testified concerning M & R's standard office procedures had not been an employee of the company until well after the notice was allegedly given. *Id.* at *4 n. 7, *5.

Both plaintiffs and KCB challenge the district court's findings. Plaintiffs con-

tend that the district court erred in dismissing those plaintiffs who did not present testimony concerning their standard office practices. **[BB 16–17]** We find no error in these dismissals.

It is axiomatic that we will not set aside a district court's factual findings following a bench trial unless they are clearly erroneous, and, further, that we must give "due regard ... to the opportunity of the trial court to judge the credibility of the witnesses." Fed.R.Civ.P. 52(a). Plaintiffs do not assert any clear error in the district court's fact-finding. Instead, they claim that it was legal error to preclude the dismissed plaintiffs from relying on the testimony of witnesses produced by other plaintiffs to establish their own standard office procedures. It is no surprise that plaintiffs cite no legal support for the novel rule they propose, given that under the Federal Rules of Evidence witnesses may testify only as to matters within their personal knowledge. *See* Fed.R.Evid. 602.

Moreover, plaintiffs have not established any persuasive basis to support the requisite inference that all plaintiffs maintained the same office procedures. Indeed, the presumption of timely notice extended by the district court to the fourteen plaintiffs who did provide testimony as to their office practices was itself a somewhat slender reed, given KCB's introduction of a certified mail receipt to rebut the presumption with respect to Hunt's Point Tomato Co. Plaintiffs nevertheless argue that the dismissed plaintiffs were entitled to the same presumption because each provided certified copies of their notices to the USDA and Shalom's principal testified to receiving notices in mid-October, which, plaintiffs assert, would have been timely with respect to the claims of the eight dismissed plaintiffs. However, as the district court pointed out, Shalom's principal could not recall which notices he received,

nor precisely when he received them. The district court's conclusion that there was insufficient evidence to support a finding that Shalom had received notices from these eight plaintiffs was not error; accordingly, we affirm the district court's dismissal of their claims.

■■■ KCB's cross-appeal presents a somewhat closer question on the issue of notice: KCB argues that PACA requires plaintiffs to substantiate that they perfected their PACA rights by submitting business records to establish timely notice, and that the circumstantial evidence and mailing presumptions relied upon by the district court do not satisfy that requirement. KCB further asserts that plaintiffs' proof was deficient in any event, because none of the witnesses had personal knowledge of whether or even how notices were sent to Shalom.

While KCB's argument is not without force, it does not provide a sufficient basis to disturb the district court's findings here, given the deference ordinarily accorded a district court's factual findings following a bench trial. The district court credited the fourteen witnesses who testified about standard office procedures as well as the corroborating testimony of Shalom's principal. Furthermore, this testimony was corroborated by certified copies of timely notices to the USDA, see *In re East Coast Brokers & Packers, Inc.*, 961 F.2d 1543 (11th Cir.1992) (plaintiff's evidence—certified copy of notice to USDA and testimony as to office practices—was sufficient to raise presumption of mailing of timely notice to PACA debtor); *C.H. Robinson Co. v. B.H. Prod. Co.*, 723 F.Supp. 785 (N.D.Ga.) (USDA's certification of timeliness and sufficiency of notice was persuasive, but not binding, evidence that timely notice was sent to PACA debtor), *aff'd* 952 F.2d 1311 (11th Cir.1989). Accordingly, we also affirm the district court's ruling that fourteen plaintiffs perfected their PACA rights.

## II. *KCB's Liability for Receipt of PACA Funds in Breach of Trust*

Each party challenges the district court's calculation of damages, including the implicit theory of liability upon which that calculation was based. Plaintiffs attack the district court's refusal to award damages in the full amount Shalom owed to plaintiffs. KCB argues in its cross-appeal that the district court erred both in holding KCB liable as a third-party transferee of PACA funds and in rejecting KCB's affirmative defense that it was a bona fide purchaser for value ("BFP"). Both plaintiffs and KCB challenge the sufficiency of the evidence relied upon by the district court in assessing damages. We need not and do not address whether KCB established a BFP defense or the amount of damages awarded by the district court because we conclude that the district court failed to properly assess the threshold question of whether KCB could be held liable for Shalom's alleged breaches of its PACA duties.

Plaintiffs' primary contention is that the theory of liability imposed by the district court mistakenly focused on the ultimate disposition of the funds upon their withdrawal from the KCB account, rather than KCB's acceptance of nearly $2 million in PACA funds deposited by Shalom during the Breach Period. In plaintiffs' view, Shalom breached its trust obligations each and every time it deposited PACA trust funds into its negatively balanced overdraft checking account, thereby automatically reducing the negative balance and reducing Shalom's indebtedness to KCB. Under this theory, each deposit constituted partial repayment to KCB for the funds KCB effectively loaned to Shalom when it honored Shalom's overdrafts. Because the

breach occurred at the moment of deposit, plaintiffs aver, each subsequent withdrawal by Shalom to pay non-PACA creditors was, of necessity, a new loan extended by KCB—not, as the district court held, a withdrawal of trust funds—and thus was not a breach of Shalom's trust obligations. We agree with plaintiffs to the extent they argue that, in assessing damages, the district court conflated the issue of whether Shalom breached its PACA duties when it *deposited* PACA funds into the KCB account with the very distinct issue of whether Shalom breached its duties when it *withdrew* funds from the KCB account to pay non-PACA creditors. But we part ways with the plaintiffs as to how these distinct issues affect KCB's liability for Shalom's alleged breaches.

As we explained in *American Banana*, a depository institution may be held liable for *receipt* of PACA funds in breach of trust only if the PACA trustee's deposit of funds into a bank account constitutes a breach of its obligations. 362 F.3d at 41; *see also E. Armata*, 367 F.3d at 128–29, 135 (holding that "beneficiaries must first establish that the PACA trustee's deposit of ... funds itself constituted a breach of trust"). And even then, the bank can be held liable only if it accepts the deposit with actual or constructive notice of the breach. *See E. Armata*, 367 F.3d at 129 n. 7.

There is, however, more than one basis upon which a bank like KCB could be held liable for participating in a PACA trustee's breaches. A bank may also be held liable for participating in a PACA trustee's breach of trust in *withdrawing* funds, which would be the case, for example, when a trustee who has already defaulted on its obligations to its PACA creditors withdraws funds to pay non-PACA creditors—*i.e.*, the very facts presented here. In contrast to liability for receipt of

funds in breach of trust, however, the bank's liability in this situation is predicated on its participation in the breach by permitting the trustee to make the withdrawal. *See, e.g., Restatement (Second) of Trusts* § 324 (1959) ("[A] bank is liable for ... permitting [a] trustee to withdraw ... trust funds, where the trustee commits a breach of trust in making the ... withdrawal ....."). Like receiving funds in breach of deposit, however, liability for permitting a withdrawal lies only if the bank had notice of the breach. *See, e.g., id.* ("[A] bank is liable ... if, *but only if, the bank ... permitted the withdrawal with notice of the breach* of trust.") (emphasis added).

While the court in *American Banana* ultimately did not resolve the issue of the bank's liability, the court in *E. Armata* did. In the latter case, which presented facts nearly identical to those before us, we rejected the plaintiffs' argument that "[a] PACA trustee's deposit of funds into a [negatively balanced] checking account ... constitute[s] a breach of a PACA trust." *E. Armata*, 367 F.3d at 135. Noting that PACA creates a 'non-segregated floating trust' ... [that] permits the commingling of trust assets" and that the PACA trustee's primary duty is to "maintain trust assets in a manner that such assets are freely available to satisfy outstanding obligations to [PACA beneficiaries]," *id.* (quoting *Endico Potatoes*, 67 F.3d at 1067 and 7 C.F.R. § 46.46(d)(1)), we held that the proper test was whether in "making such a deposit ... [the PACA trustee] in any way encumber[ed] the funds or render[ed] them less 'freely available' to PACA creditors." If not, we concluded, the deposits could not be viewed as a breach of PACA obligations.

Applying the reasoning of *E. Armata* to the present case, it becomes clear that the district court erred in holding

KCB liable for *receipt* of trust funds in breach of trust on the basis of Shalom's *withdrawal* of PACA funds to pay other non-PACA creditors. The district court's holding, in effect, used a trustee's breach of trust in withdrawing funds to transform a prior non-breaching deposit to the account into a breach of trust retroactively. The fallacy of the district court's theory, of course, is that KCB could not possibly have had notice of a future breach when it received the deposit.[4] To the extent the district court's imposition of liability was based on Shalom's payments to non-PACA creditors, therefore, it is foreclosed by the rule announced in *E. Armata*, 367 F.3d at 135, and is reversed.[5]

■ KCB's liability—if any—for receipt of PACA trust funds would be limited to PACA funds that KCB actually retained. With respect to KCB's retention of interest and service fees, we held in *E. Armata* that the costs associated with maintaining an account for PACA trust funds does not breach a PACA trustee's obligations provided the costs are commercially reasonable. *Id.; see also Boulder Fruit*, 251 F.3d at 1271 (holding that PACA trustee's sale of accounts receivable to factor at discount was commercially reasonable and, therefore, was not a breach of trustee's PACA obligations). Because the district court did not take these limitations into account in determining KCB's liability to plaintiffs, we vacate the imposition of liability to the extent it was based on KCB's collection of interest and service fees, and remand to the district court for reconsideration in light of the instructions given by the court in *E. Armata*. Specifically, upon remand, the district court should:

> determin[e] ... whether [Shalom]'s banking arrangements with KCB were indeed "commercially reasonable."

If the District Court concludes that [Shalom]'s banking relationship with KCB was "commercially reasonable," then [Shalom]'s expenditures on interest and fees in maintenance of its checking account did not constitute a breach of its duties as a PACA trustee, and, consequently, KCB cannot be held liable as a third-party transferee for the funds it retained as fees and interest to maintain the account. If, on the other hand, the District Court concludes that [Shalom]'s expenditures on the checking account were not "commercially reasonable," ... then the Court should proceed to determine whether KCB is liable for receipt of those funds in breach of a PACA trust. Finally, if the District Court holds that the bank is liable for receipt of funds in breach of a PACA trust, the Court must reconsider KCB's defenses to liability.

*E. Armata*, 367 F.3d at 134.

■ Unlike *E. Armata*, however, our review in this appeal has been limited by the fact that the record on appeal contains only the first four bank statements of the eighteen-month Breach Period. The activity reflected in those statements is consistent with the activity reviewed in *E. Armata*. The following chart summarizes (approximately, as some digits in the rec-

---

4. *See Restatement (Second) of Trusts* § 324 (1959) ("If the trustee deposits trust funds in a bank, the bank is liable for participation in the breach of trust in receiving ... the trust funds, where the trustee commits a breach of trust in making the deposit ..., if, but only if, the bank *received the deposit ... with notice of the breach* of trust.") (emphasis added).

5. We note that plaintiffs did not seek to hold KCB liable for Shalom's wrongful withdrawals to pay non-PACA creditors and, indeed, as explained above, under its theory of liability, the withdrawals were not breaches. Moreover, there is no evidence in the record on appeal that KCB had notice that Shalom's withdrawals were breaches.

ord documents are illegible) the account activity for those four months:

| | OPENING BALANCE | | TOTAL CREDITS | | TOTAL DEBITS | | CLOSING BALANCE |
|---|---|---|---|---|---|---|---|
| AUG. 26, 1988 | − 69,979 | + | 289,272 | − | 389,527 | = | − 170,233 |
| SEPTEMBER | − 170,233 | + | 1,259,372 | − | 1,255,265 | = | − 166,127 |
| OCTOBER | − 166,127 | + | 157,937 | − | 115,430 | = | − 123,620 |
| NOVEMBER | − 123,620 | + | 77,145 | − | 89,233 | = | − 135,709 |
| TOTAL | − 69,979 | + | 1,783,726 | − | 1,849,455 | = | − 135,709 |

SOURCES: EXHIBIT PAGES E–1497–99, E–1501, E–1509, E–1511, E–1513, E–1515, E–1516

Reviewing these bank statements [E–1491—E–1516] against Shalom's check register [E–1892—E–1911] indicates that, apart from fees for bounced checks ("return check charge" and "insf charge") and monthly interest and service fees [see, e.g., E–1498 & E–1499], KCB did not "retain" any funds deposited as payment on the principal debt owed by Shalom. In fact, during this period, KCB allowed Shalom to withdraw about $65,000 more than it deposited, and thereby increased Shalom's indebtedness to KCB. The district court similarly found that by the end of the Breach Period, KCB had extended $60,000 additional credit to Shalom, which it ultimately lost. See Albee Tomato III, 282 F.Supp.2d at 23. Because we have only reviewed part of the record, however, the district court on remand will also need to ascertain whether KCB retained any trust funds apart from the fees and interest it collected as part of its banking arrangement with Shalom, and, if it did, whether such retention was commercially reasonable. In the event the district court finds that KCB's retention of any funds was not commercially reasonable, KCB may assert any applicable defenses.

III. Remaining Claims

In light of our holding with respect to KCB's liability to plaintiffs, we do not reach the parties' claims that the district court's calculation of damages lacked sufficient factual support and detailed findings, nor do we address KCB's argument that the district court erred in rejecting its BFP defense. These matters, if still relevant, may be renewed before the district court on remand.

CONCLUSION

For the foregoing reasons, we (1) AFFIRM the district court's dismissal of eight plaintiffs for failure to establish compliance with PACA's statutory notice requirements; (2) AFFIRM the district's holding that fourteen plaintiffs perfected their PACA rights through proper notice; (3) REVERSE the district court's finding of liability for receipt of funds in breach of trust based on the fact that KCB honored checks issued by Shalom to non-PACA creditors; and (4) REMAND to the district court with instructions to determine, on a fully developed record, (a) whether the interest and service fees KCB charged against the Shalom account were commercially reasonable; (b) whether KCB retained any PACA funds deposited in Shalom's account in addition to those it collected for service fees and interest, and if so, whether such retention was

commercially reasonable; and (c) if KCB's retention of any funds was not commercially reasonable, whether any defenses asserted by KCB preclude the imposition of liability.