**In the Matter of William Scott GRAHAM, Debtor.**

**William Scott Graham, Movant,**

**v.**

**James and Linda Hudson, Respondents.**

**No. A01–81336–PWB.**

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

Jan. 9, 2003.

in this case because it has already reached the merits on other grounds.

E.L. Clark, Clark & Washington, P.C. Atlanta, GA, for William Scott Graham, Debtor.

Julie Howard, Weissman, Nowack, Curry & Wilco, Atlanta, GA, for Lee's Crossing Homes Association, Inc., Creditor.

Jonathan H. Petcu, Moore, Ingram, Johnson & Steele, LLP, Marietta, GA, for James Hutson and Linda Hutson, Creditor.

Sean R. Quirk, Shapiro & Swertfeger, Atlanta, GA, for BOK Mortgage, Creditor.

M. Regina Thomas, Atlanta, GA, for Trustee.

### MEMORANDUM OPINION WITH REGARD TO OBJECTION TO PROOF OF CLAIM OF JAMES AND LINDA HUDSON

PAUL W. BONAPFEL, Bankruptcy Judge.

William Scott Graham ("Debtor") has objected to the proof of claim of James and Linda Hudson ("Creditors") in this Chapter 13 case on the ground that it was not timely filed. This contested matter is a core proceeding under 28 U.S.C. § 157(b)(2)(B) over which this Court has jurisdiction pursuant to 28 U.S.C. § 157(b)(1) and 28 U.S.C. § 1334. This opinion constitutes the Court's findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, applicable to this contested matter pursuant to Rules 7052 and 9014 of the Federal Rules of Bankruptcy Procedure.

Creditors' claim is based on a judgment in the amount of $61,854.74 obtained in January 1999. Debtor filed this case on March 9, 2001, and the deadline for filing proofs of claim pursuant to Rule 3002(c) of the Federal Rules of Bankruptcy Procedure[1] was July 23, 2001. The claim is not disputed on the merits and, if allowed, will be paid in full from an inheritance to be received by Debtor.

Counsel for Creditors mailed a proof of claim on behalf of Creditors to the Clerk of this Court on June 25, 2001, but it was never docketed. After discovering that the proof of claim had not been docketed, counsel filed a proof of claim that was docketed on November 1, 2001.

Debtor objects to Creditors' claim on the ground that they did not file their proof of claim before the July 23 deadline. Debtor relies on Rule 3002(c), which required the filing of a proof of claim in this case prior to the July 23 deadline, and § 502(b)(9) of the Bankruptcy Code,[2] which requires disallowance of an untimely filed proof of claim. If the claim is disallowed, Debtor will retain $61,857.14 of his inheritance that would otherwise be paid to Creditors.

Creditors contend that the circumstances of this case require allowance of their otherwise undisputed claim. Their counsel filed a notice of appearance in the case and appeared at all material proceedings in the case relating to their claim. Both the Debtor and the Chapter 13 Trustee had full knowledge of the claim and never indicated any opposition to its allowance. Counsel properly mailed a duly executed proof of claim to the Clerk of this Court on June 25, well before the deadline of July 25. After he discovered, at the confirmation hearing on October 25, that the proof of claim mailed on June 25 had not been docketed, counsel promptly filed another proof of claim on November 1. Because distributions to unsecured cred-

---

1. FED. R. BANKR.P. 3002(c) provides in pertinent part:

 (c) In a chapter 7 liquidation, Chapter 12 family farmer's debt adjustment, or chapter 13 individual's debt adjustment case, a proof of claim is timely filed if it is filed not later than 90 days after the first date set for the meeting of creditors called under § 341(a) of the [Bankruptcy] Code [with certain exceptions not relevant here].

2. 11 U.S.C. § 502(b)(9) provides in pertinent part:

 (b) [If an] objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim as of the date of the filing of the petition, and shall allow such claim in lawful currency of the United States in such amount, except to the extent that—
 (9) proof of such claim is not timely filed [with exceptions not relevant here].

itors have not commenced, allowance of the claim will not prejudice the Chapter 13 Trustee or any other creditors. Based on these facts, Creditors contend their claim should be allowed and paid in this case.

The Creditors' contentions raise the following legal issues:

1. Is Creditors' proof of claim docketed on November 1 allowable on the ground that Rule 9006(b) of the Federal Rules of Bankruptcy Procedure permits a bankruptcy court to extend the filing deadline due to Creditors' excusable neglect?

2. Is Creditors' proof of claim mailed on June 25 allowable on the ground that, through application of the evidentiary principle known as the "mailbox presumption," proof of its proper mailing to the Clerk's office well before the deadline establishes, in the absence of contrary evidence, that it was received in the ordinary course and, therefore, was timely filed?

3. Is Creditors' proof of claim mailed on June 25 allowable on the ground that Rule 5005(c) of the Federal Rules of Bankruptcy Procedure permits this Court, "in the interest of justice," to deem the "erroneously delivered" proof of claim to be filed timely?

4. Is Creditors' claim allowable on the ground that the proof of claim docketed on November 1 is an amendment to an earlier, timely filed, "informal" proof of claim?

If the claim is not allowable under one of these four theories, Rule 3002(c) and 11 U.S.C. § 502(b)(9) require disallowance of the claim because of Debtor's objection to it as not being timely filed.

The Court concludes that the mailbox presumption applies in the circumstances of this case. Under this evidentiary principle, there is a rebuttable presumption that the proof of claim that counsel for Creditors properly addressed, stamped, and mailed to the Clerk of this Court on June 25 was received in the ordinary course prior to the July 23 deadline for filing claims. In the absence of evidence that this properly mailed proof of claim was not received, there is an assumption that the Clerk's office received it prior to the deadline. Because the Clerk's receipt of the proof of claim is equivalent to its filing, the proof of claim was timely filed and is allowable.

## I. FINDINGS OF FACT

The Court held a hearing on June 12, 2002. At that hearing, the parties agreed that the facts as set forth in the Affidavit of Jonathan H. Petcu, counsel for the Creditors, attached to their "Response to Objection to Proof of Claim," filed on June 7, 2002, were true. Based on that Affidavit, undisputed facts as presented at the hearing, and the record of this Court, the Court finds that the following facts are undisputed.

On January 7, 1999, Creditors obtained a judgment against Debtor in the amount of $61,854.74 in the State Court of Cobb County, Georgia. A writ of *fieri facias* was issued and recorded on the general execution dockets of Cobb County on January 29, 1999, Fulton County on September 23, 1999, and Forsyth County on September 30, 1999.

On March 9, 2001, over two years after the judgment was entered, Debtor filed a Chapter 13 petition. As required by the Federal Rules of Bankruptcy Procedure, the Clerk of this Court sent notice to creditors of the § 341(a) meeting to be held on April 24, 2001, and of a confirmation hearing to be held on May 17, 2001. In accordance with Rule 3002(c), this notice announced July 23, 2001, as the date by which proofs of claim had to be filed. Debtor listed the debt of $61,854.74 as a liquidated and undisputed debt secured by

a judgment lien on Schedule D of his Schedules of Assets and Liabilities.

On April 4, 2001, Mr. Petcu filed a formal "Entry of Appearance and Request for Notices" as counsel for Creditors. Thereafter, on April 24, Mr. Petcu appeared at the § 341(a) meeting and announced his presence on behalf of Creditors. Because Debtor failed to appear, the § 341(a) meeting was rescheduled for May 1, 2001. Mr. Petcu appeared on May 1 to participate on behalf of his clients, but Debtor was again absent. The § 341 meeting was again rescheduled for June 26, 2001.

On June 25, 2001, the day before the third scheduled § 341 meeting, Mr. Petcu prepared a proof of claim for filing on behalf of Creditors in the amount of $61,854.74, based on the State Court judgment. It is undisputed that Mr. Petcu on that same day mailed the proof of claim to the Office of the Clerk of this Court. In this regard, Mr. Petcu has produced a copy of his cover letter to the Clerk, dated June 25, 2001, clearly indicating transmittal of the proof of claim for filing. The letter is properly addressed, and the proof of claim is properly filled out. Had it been docketed in the ordinary course, there would be no issue about its timely filing prior to the bar date of July 23, 2001. The proof of claim has not, however, been docketed. There is no evidence as to whether the absence of docketing of the proof of claim is due to non-delivery of it to the Clerk's office (an error by the U.S. Postal Service) or its being lost or misplaced in the Clerk's office (an error by the Clerk's office).

Debtor attended the third scheduled § 341 meeting on June 26, 2001. Mr. Petcu again appeared on behalf of Creditors and again announced their claim in the amount of $61,854.74. Neither Debtor nor the Chapter 13 Trustee indicated that there was any objection to the claim.

Because Debtor failed to attend the first two § 341 meetings, the confirmation hearing originally scheduled for May 17 had to be rescheduled for August 9, 2001. Mr. Petcu appeared at the August 9 hearing and discussed the claim of Creditors with the Chapter 13 Trustee. However, Debtor did not appear at this hearing, and it was rescheduled for October 25 based on the receipt of information that Debtor would receive an inheritance from his mother's estate, who died after the filing of the Chapter 13 case. There was no indication at the August 9 hearing that the proof of claim mailed on June 25 had not been docketed; apparently, no one checked the Court's docket at this time.

In the meantime, on March 29, 2001, counsel for Debtor filed a motion to avoid the lien of the judgment obtained by Creditors, thus demonstrating full awareness of its existence. In this regard, Debtor's schedules reflected that he had no non-exempt assets to which the judgment lien of Creditors would attach. Creditors had no basis for contesting Debtor's position that the lien should be avoided, and they did not respond to the motion. On May 18, 2001, the Court routinely entered an order avoiding the otherwise valid judgment lien. Avoidance of the lien pursuant to 11 U.S.C. § 522(f), of course, did not affect allowability of the claim in the amount of the judgment as an unsecured claim. Indeed, between the filing of the lien avoidance motion and entry of the order, Creditors' counsel was proceeding to assert the unsecured claim in the case by diligently attending the scheduled § 341 meeting that Debtor missed.

It appears that Debtor's inheritance from his mother's estate will produce sufficient funds to pay all creditors in full. Consequently, confirmation of Debtor's Chapter 13 Plan required that the Chapter 13 Plan provide for payment of 100 per-

cent of claims of unsecured creditors and that all proceeds of his inheritance be paid to the Chapter 13 Trustee. *See* 11 U.S.C. § 1324(a)(4). Debtor amended his plan to add these provisions on August 29, 2001. Debtor did not amend his schedules to reflect the inheritance until the filing of amendments on April 26, May 1, and May 7, 2002, some three months after Debtor objected to the claim of Creditors. The May 7 amendment also reflects personal property with a value of $26,415.75 that Debtor inherited. Creditors' judgment lien, if not avoided, might attach to these items because their value may exceed the exemption he can claim. Moreover, absent the Chapter 13 filing and avoidance of the lien, Creditors would be entitled to garnish any inheritance distributions to Debtor.

The hearing on confirmation of the amended plan was held on October 25, 2001. Once again, Mr. Petcu was in attendance. On October 28, the Court entered an Order confirming the amended plan.

At the time of the October 25 hearing, the Chapter 13 Trustee advised Mr. Petcu that her records did not indicate that a proof of claim had been docketed. Promptly upon discovery of this problem, Mr. Petcu filed another proof of claim with the Court on November 1, 2001, less than a week after the hearing on confirmation and four days after entry of the Order confirming the Debtor's Chapter 13 Plan, but some three months after the deadline for filing claims. This proof of claim was docketed.

In accordance with her usual practice when a proof of claim is filed after the deadline, the Chapter 13 Trustee on December 6, 2001, filed a notice of intent to pay the claim unless objections were filed within 20 days. The reason is that, in the absence of an objection, the Bankruptcy Code does not require disallowance of a claim. *See* 11 U.S.C. § 502(a). Two months later—after the expiration of the 20 day deadline given in the Trustee's notice—Debtor filed his objection. Although no objection had been filed prior to expiration of the 20 day deadline, the Chapter 13 Trustee did not commence distributions on Creditors' claim because of its unsecured, nonpriority status; under the terms of the plan, priority and secured claims are paid in full prior to any payments on unsecured claims.

On November 9, 2001, the Chapter 13 Trustee gave notice of her intent to pay another late-filed claim asserted by George Allen Meighen in the amount of $45,200. Debtor has not objected to this claim, and the record does not show any reason that Debtor would favor this claimant over Creditors.

Because the Chapter 13 Plan, as amended, contemplates that unsecured creditors will, for the most part, be paid from proceeds from the estate of Debtor's deceased mother that have not yet been received, allowance of Creditors' claim would not create any problems with regard to distribution to creditors for the Chapter 13 Trustee or any other creditors. The only adverse effect of allowance of the claim is that Debtor will receive $61,854.74 less from his inheritance.

## II. DISCUSSION

Creditors have diligently pursued their claim against Debtor. They began by obtaining a judgment—a judicial determination that Debtor is indebted to them. Over two years later, Debtor filed this Chapter 13 bankruptcy case. Counsel for Creditors attended three § 341 meetings and two confirmation hearings, and made their claim known at each instance. At the same time, Debtor missed two § 341 meetings. Although Debtor's failure to attend these meetings could have resulted in

dismissal of the case, the usual practice and procedure in this Court operated to give him additional chances to obtain relief.

Despite Creditors' diligence in appearing at proceedings in this case on five occasions to prosecute their claim, despite Creditors' mailing of a proof of claim in time for it to be received by the deadline of July 23 in the ordinary course, despite the fact that there are no substantive grounds to contest the judgment claim on the merits, despite the fact that Debtor and the Chapter 13 Trustee knew about the claim, despite the fact that Debtor's lack of diligence did not result in the denial of relief to Debtor, and despite the fact that there is no unfair prejudice to Debtor, the Chapter 13 Trustee, or any other party in this case, Debtor contends that, because the mailed proof of claim was never docketed and the docketing of the later proof of claim on November 1 occurred after the deadline, Creditor's claim must be disallowed because it was not timely filed. Because Debtor's anticipated inheritance will produce enough assets to pay all claims, including Creditors' claim, in full, Debtor will receive a windfall of over $60,000 if the claim is disallowed on the ground of untimely filing, merely because of an error by either the United States Postal Service or the Clerk's office.

■ Section 502(b)(9) of the Bankruptcy Code provides for disallowance of a claim in a bankruptcy case, if an objection is filed, "if proof of it is not timely filed, except as permitted [under 11 U.S.C. § 726(a)] or under the Federal Rules of Bankruptcy Procedure." 11 U.S.C. § 502(b)(9). Rule 3002(c) of the Federal Rules of Bankruptcy Procedure requires that, in Chapter 7 and Chapter 13 cases, proofs of claim be filed within 90 days of the date first set for the § 341(a) meeting, with certain exceptions not relevant here.

These provisions require disallowance of Creditors' claim unless there is either a basis for extension of the deadline for filing it or a determination that it was timely filed.

A. *Extension of the Deadline*

If this were a Chapter 7 or Chapter 11 case, the timeliness of the filing of the proof of claim would not be an issue. In a Chapter 7 case, late-filed claims are paid after timely filed claims are paid. 11 U.S.C. § 726(a)(3). Because the assets of Debtor's estate, including the inheritance, are sufficient to pay all claims, Creditors' proof of claim would be allowed and paid in a Chapter 7 case regardless of whether it was timely filed. The distributive provisions of 11 U.S.C. § 726 apply only in Chapter 7 cases, however. 11 U.S.C. § 103(b).

In a Chapter 11 case, Rule 9006(b)(1) of the Federal Rules of Bankruptcy Procedure authorizes the court to enlarge the time for the filing of a proof of claim where the failure to file it timely is the result of "excusable neglect." *Pioneer Inv. Services Co. v. Brunswick Assoc. L.P.*, 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). Creditors here would easily meet the "excusable neglect" test enunciated in *Pioneer, id.* at 395, 113 S.Ct. 1489, regardless of whether the claim was timely filed: the delay in filing the claim has caused no prejudice to Debtor or any other party; the delay has not been long and has had no impact on the proceedings in this case; the reason for the delay is an error on the part of the U.S. Postal Service or the Clerk's office, neither of which is within the control of Creditors; and Creditors have acted in good faith. Indeed, the only criticism that could be leveled at Creditors is that their attorney should have checked this Court's claims register, prior to the expiration of the deadline, to confirm that

the proof of claim had been docketed. But this oversight is far less blameworthy than the conduct of the creditor's attorney in *Pioneer*, an experienced bankruptcy practitioner who failed to file a timely proof of claim because he was unaware of the bar date that had been included in the notice of the § 341 meeting. *Id.* at 383–84, 113 S.Ct. 1489. Indeed, the bankruptcy court in *Pioneer* had determined as a matter of fact that the creditor's attorney had been negligent in missing the bar date and, "to a degree," indifferent to it. *Id.* at 386, 113 S.Ct. 1489. Mr. Petcu, in contrast, acted diligently in submitting the proof of claim for filing well in advance of the bar date.[3]

Most courts restrict application of the excusable neglect rule to Chapter 11 cases and do not permit its use in Chapter 13 cases. *E.g., In re Thomas*, 181 B.R. 674 (Bankr.S.D.Ga.1995) (proof of claim mailed five days before bar date but received five days after bar date is not allowable in Chapter 13 case); *cf. Pioneer, supra*, 507 U.S. at 389, n. 4, 113 S.Ct. 1489 ("excusable neglect" exception not applicable in Chapter 7 cases). *Accord, In re Wheat*, Case No. 00–42392 (Bankr.N.D.Ga. June 28, 2002) (Massey, J.). The basis for refusing to apply the excusable neglect rule to proofs of claim in Chapter 7 and 13 cases is that Rule 9006(b)(1), which generally permits enlargement of certain deadlines based on "excusable neglect," including the deadline for claims in Chapter 11 cases as established under Rule 3003, does not apply to Rule 3002(c), which governs the filing of claims in Chapter 7 and Chapter 13 cases. Rather, Rule 9006(b)(3) permits enlargement of the time for taking action under Rule 3002(c) "only to the

extent and under the conditions stated" in Rule 3002(c). Rule 3002(c) contains no authority to extend the deadline for filing claims for excusable neglect.

Applying the foregoing reading of Rules 9006(b) and 3002(c), the majority of courts have established the general rule that the bankruptcy court does not have discretion to extend the deadline for filing proofs of claim in Chapter 13 cases for excusable neglect. *E.g., In re Miranda*, 269 B.R. 737 (Bankr.S.D.Tex.2001); *In re Kelley*, 259 B.R. 580 (Bankr.E.D.Tex.2001).

If the excusable neglect doctrine is not applicable in this Chapter 13 case, the claim of Creditors is allowable only if a proof of claim was timely filed. The Court concludes that, in the circumstances of this case, the common law evidentiary principle known as the "mailbox presumption" applies so that proof of proper mailing of the proof of claim raises a rebuttable presumption of its receipt by the Clerk in the ordinary course; therefore, in the absence of other evidence, the Court assumes that the proof of claim mailed on June 25 was received by the Clerk's office in the ordinary course well before the July 23 deadline. Because the Clerk's receipt of the proof of claim is all that is required to establish its filing, there was a timely filing as required by Rule 3002(c).

There are two other theories to support timely filing. The first is that there has been an "erroneous delivery" of the proof of claim mailed on June 25 within the meaning of Rule 5005(c) such that this Court, in the interest of justice, may deem it to have been timely filed. *Cf. West v. Gens*, 1992 WL 205677 (N.D.Ill.1992). A

---

**3.** In *Chrysler Motors Corp. v. Schneiderman (In re Schneiderman)*, 940 F.2d 911, 915 (3d Cir.1991), the court ruled that the timely mailing of a proof of claim that was not docketed in a Chapter 11 case was not a neglectful oversight but a "conscious selec-

tion of a delivery procedure." Thus, that court found no excusable neglect. Such analysis yields to the more forgiving analysis of excusable neglect later set forth by the Supreme Court in *Pioneer*.

second theory is that the proof of claim docketed on November 1 should be allowed as an amendment to a timely filed informal proof of claim under principles set forth in cases such as *United States v. International Horizons, Inc.*, 751 F.2d 1213, 1216–1217 (11th Cir.1985), *Fyne v. Atlas Supply Co.*, 245 F.2d 107, 108–09 (4th Cir.1957), *Cook v. Union Trust Co.*, 71 F.2d 645, 647 (4th Cir.1934), and *Dabney v. Addison*, 65 B.R. 348, 350 (E.D.Va.1985). In view of the conclusion that the proof of claim was timely filed based on application of the mailbox presumption, the Court does not consider these alternative theories.

B. *Timely Filing Based on "Mailbox Presumption"*

The filing requirements with regard to proofs of claim are set forth in FED. R. BANKR.P. 3002(b) and 5005. Rule 3002(b) states, "A proof of claim or interest shall be filed in accordance with Rule 5005." Rule 5005(a)(1) provides, "[P]roofs of claim ... shall be filed with the clerk in the district where the case under the Code is pending." Rule 5003(b) provides, "The clerk shall keep in a claims register a list of claims filed in a case when it appears that there will be a distribution to unsecured creditors."

■ The necessary implication of these rules is that the "filing" of a proof of claim pursuant to Rule 5005(a)(1) takes place upon its physical delivery to the clerk's office. The filing party has no control over the proof of claim once it is delivered, and the clerk thereafter is responsible for its custody and proper listing under Rule 5003(b). If a filing party proved, as a matter of fact, that it had delivered a paper to the clerk's office, such as by producing a conformed copy with the clerk's filing stamp or testimony that it had actually been passed across the counter, there is unquestionably a filing whether the paper is later properly docketed, lost, or misplaced. Thus, nothing more than proof of the clerk's receipt of a paper is necessary to establish its filing.

■ The "mailbox presumption" is a common law evidentiary principle that permits a party to prove receipt of a paper that has been properly mailed. The Supreme Court stated the rule in *Rosenthal v. Walker*, 111 U.S. 185, 193, 4 S.Ct. 382, 28 L.Ed. 395 (1884): [4]

> The rule is well settled that if a letter properly directed is proved to have been either put into the post-office or delivered to the postman, it is presumed, from the known course of business in the post-office department, that it reached its destination at the regular time, and was received by the person to whom it was addressed.

The Eleventh Circuit has applied the mailbox presumption to determine that proof of the mailing of notices of a claim that federal law requires a defendant to receive as a condition to a party's entitlement to relief raises a rebuttable presumption of such receipt. *Barnett v. Okeechobee Hospital*, 283 F.3d 1232 (11th Cir.2002) (Notice of claim must be timely received by agency of United States as condition for assertion of claim under Federal Tort Claims Act); *Konst v. Florida E. Coast Ry.*, 71 F.3d 850 (11th Cir.1996) (Notice of claim must be timely received by common carrier regulated by Interstate Commerce Commission as a condition to an assertion of claim for damage to shipped goods); *Gonzales Packing Co. v. East Coast Bro-*

4. *Accord, e.g., Hagner v. United States*, 285 U.S. 427, 430, 52 S.Ct. 417, 76 L.Ed. 861 (1932).

*kers and Packers, Inc.,* 961 F.2d 1543 (11th Cir.1992) (Notice of claim must be timely received by buyer as a condition to an assertion of claim under Perishable Agricultural Commodities Act).

 Under the mailbox presumption, the undisputed mailing of Creditors' proof of claim establishes a rebuttable presumption that the Clerk's office received it. The absence of docketing of the proof of claim does not rebut the presumption, *Barnett,* 283 F.3d at 1241, and there is no other evidence that the proof of claim was not received. The mailing of the proof of claim occurred on June 25, 2001, well before the filing deadline of July 23, 2001. Thus, if the mailbox presumption applies in this case, there is an assumption that the proof of claim was received, and therefore filed, prior to the claims deadline.

Courts have disagreed as to whether the mailbox presumption applies to the filing of a proof of claim in a bankruptcy court. In *In re Nimz Transportation, Inc.,* 505 F.2d 177 (7th Cir.1974), the Seventh Circuit applied the presumption to determine that properly mailed claims had been timely received by the clerk, despite the fact that they had not been docketed.[5] The Third Circuit adopted a contrary rule in *Chrysler Motors Corp. v. Schneiderman (In re Schneiderman),* 940 F.2d 911 (3d Cir.1991).[6]

The Eleventh Circuit has not ruled on applicability of the mailbox presumption in the context of the filing of a proof of claim. In *Standley v. Graham Production Co.,* 83 F.2d 489 (5th Cir.), *cert. denied* 299 U.S. 593, 57 S.Ct. 115, 81 L.Ed. 437 (1936), the Fifth Circuit[7] applied the presumption to determine that the mailing of notice of a sale of property free of liens by the bankruptcy court to a creditor established the creditor's receipt of it such that the creditor had notice of the proceeding that divested her lien. Although that case supports the application of the presumption in bankruptcy cases, dicta in the Eleventh Circuit's opinions in *Konst v. Florida E. Coast Ry.,* 71 F.3d 850, 853–55 (11th Cir. 1996) and *Barnett v. Okeechobee Hospital,* 283 F.3d 1232, 1239–40 (11th Cir.2002), which held that the mailbox presumption applied on the facts in those cases, noted that the mailbox presumption may not apply to a filing with a court.

Analysis of Eleventh Circuit precedent relating to the issue before this Court begins with the Fifth Circuit's decision in *Smith v. Fidelity & Cas. Co.,* 261 F.2d 460 (5th Cir.1958). In *Smith,* the plaintiff worker brought a worker's compensation claim against the insurer seven years after the injury occurred. The insurer defended on the ground that the worker had not filed a timely claim with the Industrial Accident Board within six months of his injury as required by the Texas worker's compensation statute. The worker, in response, asserted that, while hospitalized shortly after the accident, he had mailed a claim to the Board. This proof, the worker contended, raised a presumption that the Board had received the claim and that, therefore, he had timely filed a claim. At trial, the district court granted the insurer's motion for judgment in its favor on the ground that the claim had not been timely filed.

---

5. *Accord, e.g., In re Pyle,* 201 B.R. 547 (Bankr. E.D.Cal.1996).

6. *Accord, e.g., In re 50–Off Stores, Inc.,* 220 B.R. 897 (Bankr.W.D.Tex.1998).

7. Decisions of the former Fifth Circuit rendered prior to October 1, 1981, are binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

The Fifth Circuit held that the worker had not proved a timely filing of his claim. The court began by noting that the mailbox presumption established a presumption that the claim was delivered but that such presumption established only delivery of the claim. The court then explained that the law did not permit the building of two additional presumptions on the mailbox presumption: that the claim, when received, got into the hands of the proper person to file it and that it was filed. Thus, the court stated, *id.* at 462:

If, therefore, the matter were of first impression and there were no cases on point, we should be bound to hold that the evidence relied on here is completely without probative force to prove filing.

The court then cited a number of cases for the proposition that "neither deposit in the mail nor delivery by mail constitutes the filing of a claim." *Id.* at 463. In this regard, the court quoted the following from *United States v. Lombardo,* 241 U.S. 73, 76, 36 S.Ct. 508, 60 L.Ed. 897 (1916) (citation omitted), *Smith,* 261 F.2d at 463:

Filing, it must be observed, is not complete until the document is delivered and received. "Shall file" means to deliver to the office, and not send through the United States mails.

The court also cited authorities "to the effect that a paper is filed when it is delivered to the proper officer and by him received to be kept of file." *Id.* at 463 (citations and internal quotations omitted).

The court then concluded with this holding, *id.* at 463:

When the question this appeal poses, whether the evidence offered to prove filing was sufficient, is considered, in the light of the presumption that officers do their duty and of the undisputed evidence that more than seven years passed after the claimed mailing, with nothing being said or done by plaintiff

with regard to the claim, we think it quite clear: that there is no basis for the claim for error; that the judgment was right; and that it must be affirmed.

The Eleventh Circuit has cited *Smith* in two cases. The first is *Konst v. Florida E. Coast Ry.,* 71 F.3d 850, 854–55 (11th Cir. 1996). There, the plaintiffs sought to establish that their claim for damages to their furniture shipped by the defendant railroad had been timely filed with the railroad, as required by the shipping contract and applicable federal regulations, by proving that it had been mailed to the railroad. The district court granted summary judgment to the railroad based on its proof that it had never received the claim form, ruling that the mailbox presumption did not apply where the shipping contract required the claim to be "filed" with the railroad.

The Eleventh Circuit found that, under the federal regulations governing claims against a carrier for damages, the filing requirement was met by proof of receipt. *Id.* at 853. Consequently, the court held that the mailbox presumption—"a traditional means of weighing evidence in order to determine whether receipt occurred," *id.*—applied and that, therefore, proof of mailing the claim established a rebuttable presumption that the claim had been filed, thus precluding summary judgment.

In reaching this result, the court discussed and distinguished *Smith.* The court read *Smith* as concluding that the mailbox presumption was inapplicable to the filing in *Smith* because filing there involved "not only delivery to the proper address, but the further requirement that the document 'when received ... got into the hands of the proper person to file it....'" *Id.* at 854 (quoting Smith, 261 F.2d at 462). The *Konst* court also noted that the *Smith* court had "highlighted the

fact that the word 'filed' in that context 'imports that the claim is to be placed permanently on the files of the board, so that any person interested may refer to it.'" *Konst,* 71 F.3d at 854.

The *Konst* court also discussed and distinguished the Third Circuit's decision in *Chrysler Motors Corp. v. Schneiderman (In re Schneiderman),* 940 F.2d 911 (3d Cir.1991), which had refused to apply the mailbox presumption to the filing of proofs of claim in a Chapter 11 case. The *Konst* court found that the Third Circuit's decision not to allow the presumption in that case was based on "the need for speedy resolution of bankruptcy claims." *Konst,* 71 F.3d at 854.

The *Konst* court thus distinguished both *Smith* and *Chrysler Motors Corp.* on their facts because filing in the *Smith* worker's compensation context required more than mere receipt and because *Chrysler Motors Corp.* involved a special need for speedy handling. *Konst,* 71 F.3d at 854. In addition, the court distinguished these cases because they involved the filing of a document with a court or governmental entity. *Id.* at 854–55. Noting the presumption that officers of the government perform their duties and that the governmental entities in those cases, unlike the railroad in *Konst,* had no pecuniary interest in denying receipt of documents allegedly filed, the court reasoned, *id.* at 855:

> It is understandable that courts would be more reluctant to apply the [mailbox] presumption where the recipient is a governmental entity, especially when that entity does not stand to gain by claiming that the documentation in question was not received.

Significantly, the *Konst* court left open the question presented in this case. In a footnote to the sentence quoted in the previous paragraph, the court stated, *id.* at 855, n. 11:

However, it should be noted that the presumption of receipt has been applied in many situations in which a governmental entity is the intended recipient of the document in question. *See, e.g., Anderson v. United States,* 966 F.2d 487 (9th Cir.1992); *American Casualty Reading Pa. v. Nordic Leasing, Inc.,* 42 F.3d 725 (2d Cir.1994). We need not decide the issue of whether, or under what circumstances, the presumption should apply to a governmental entity.

The other Eleventh Circuit case citing *Smith* is *Barnett v. Okeechobee Hospital,* 283 F.3d 1232 (11th Cir.2002), a suit for medical malpractice brought against the United States Department of Veterans Affairs (the "VA") under the Federal Tort Claims Act, which requires that a tort claim against the United States be presented to the appropriate agency within two years after it accrues. The VA presented affidavits that it had not timely received the claim form required under the Federal Tort Claims Act and applicable regulations. The VA thus sought dismissal of the complaint on the ground that the plaintiff's failure to timely present the claim barred the lawsuit. The plaintiff proved that he had timely mailed the form to the VA and argued that, under the mailbox presumption, there was a rebuttable presumption that the VA had received it so that he had timely presented it in compliance with the statutory condition. The district court rejected the plaintiff's argument, ruling that "a claim is 'presented' when it is *received* by a federal agency" and that "[m]ailing alone is not enough; there must be evidence of actual receipt." *Id.* at 1239. On this basis, the district court dismissed the complaint because the plaintiff had not produced evidence of receipt.

The Eleventh Circuit agreed that a claim under the statute is "presented"

upon receipt, but held, citing *Konst*, that the plaintiff was entitled to the benefit of the mailbox presumption to determine whether receipt had occurred. *Barnett*, 283 F.3d at 1239. Acknowledging that *Konst* had not involved filing documents with a government agency, the *Barnett* court observed that the *Konst* court had noted this distinction and that the *Konst* court, in dicta, had mentioned the presumption that officers of the government perform their duties and had cited *Smith* and *Chrysler Motors Corp.*, "where the rebuttable presumption of receipt was not applied to filing requirements." *Id.* The *Barnett* court noted a "crucial difference" in those cases: the plaintiffs there had filed claims with courts or third-party governmental agencies, who were not otherwise involved in the litigation and "had no apparent interest in denying that they received the documents allegedly filed with them." *Id.* at 1239–40 (quoting *Konst*, 71 F.3d at 855). The *Barnett* court concluded that the United States should be treated no differently than the private litigant in *Konst*. Consequently, the court held that a claim is "presented" when it is "received" by the agency and that a rebuttable presumption of receipt arises upon proof of its proper mailing. *Barnett*, 283 F.3d at 1240.

The *Barnett* court then turned to the issue of whether the VA's evidence that VA employees had reviewed their office files and that the office had not received the claim mailed by the plaintiff was sufficient to rebut the presumption. The court found it crucial that applicable regulations *required that the claim be sent to an office* rather than to a *person*. Thus, evidence that the employees had not found the claim in the office records they reviewed could not establish that it was not received by the office. *Id.* at 1241. The court stated, *id.*:

It could have been misplaced after receipt or even misfiled. As other courts have noted, a party's failure to uncover an item, which it was presumed to have received, does not mean that it never received the item and does not rebut the presumption of delivery.

The *Barnett* court cited *Nimz Transportation* in support of this proposition and noted its holding that the fact that the bankruptcy court clerk's files did not contain proofs of claim mailed by the claimants was by itself insufficient to rebut the presumption of receipt. *Id.* at 1241–42. The *Barnett* court expressed no disagreement with the *Nimz Transportation* holding that proof of receipt by the clerk's office established filing of the claims that had been mailed.

The Eleventh Circuit in *Konst* and *Barnett* thus explained that *Smith* and *Chrysler Motors Corp.* did not control the cases before the court because they involved filing with entities who were not otherwise involved in the litigation and had no apparent interest in denying that they received the documents. The Eleventh Circuit in *Konst* and *Barnett* did not, however, consider applicability of the mailbox presumption to the filing of a paper with an uninvolved and financially disinterested entity such as a bankruptcy court clerk's office because that issue was not before it. The rationale in *Barnett* and *Konst* for the distinction between an agency of the United States and a court is, therefore, dicta.

Lack of involvement in the litigation and disinterestedness appear to provide no principled basis for making a distinction between an executive agency of the United States such as the Veterans Administration and a bankruptcy court clerk's office. Both are staffed by persons who as government employees are presumed to do their duties. In no realistic sense can it be said that employees of an executive agency who perform the ministerial function of

processing papers mailed by a claimant as required by federal law have a pecuniary or other interest that is significantly different from those of employees of a bankruptcy court clerk's office who process papers mailed by a creditor.

The observation that there is a presumption that officers of the government properly perform their duties does not help to decide applicability of the mailbox presumption. The proper performance presumption applies equally to United States Postal Service workers and to employees of the Clerk's office. Indeed, invocation of this presumption of proper performance of duties leads to the conclusion that a paper properly mailed to the clerk's office was delivered by postal employees properly doing their job, and that it was then received and docketed by employees of the Clerk's office properly doing their job. Obviously, when the mailbox presumption is at issue, one group of employees did not perform its duties properly; thus, the presumption that both perform their duties properly does not logically assist in deciding whether the mailbox presumption applies.

Both *Konst* and *Barnett* hold that there is a rebuttable presumption that a properly stamped, addressed, and mailed paper is received by the addressee. Both cases also hold that, if receipt is sufficient to establish filing as required under the law in question, such mailing establishes compliance with the filing requirement. These cases do not hold that this rebuttable presumption does not apply to receipt of a paper by a bankruptcy court clerk. Their dicta is a rationale that explains why cases dealing with court or governmental entity filing requirements do not control a case dealing with requirements for filing with a party, but that rationale does not sufficiently explain why a different rule for court filing requirements is appropriate.

*Konst* and *Barnett,* therefore, are not controlling.

*Smith,* likewise, is not controlling authority. As the *Konst* court noted, the *Smith* court ruled that the Texas worker's compensation statute required more than the Board's receipt of the claim. *Konst,* 71 F.3d at 854. Furthermore, a careful reading of the case indicates that its actual holding was that, under *all* the facts of the case, including the passage of seven years after the worker had allegedly mailed the claim, the worker had not established filing of the required notice. *Smith,* 261 F.2d at 463.

The facts in *Smith* are significantly different from those in this case. Unlike the claimant in *Smith,* Creditors here diligently prosecuted their claims in the bankruptcy case both before and after the deadline. Moreover, the filing of a proof of claim to record a claim against a debtor in a Chapter 13 case who already knows of its existence is fundamentally different from the filing of a notice that is a condition to the institution of litigation against a party who otherwise has no notice of the claim. Particularly where the claim has been dormant for seven years, it is understandable that more strict compliance with notice and filing requirements is required in the *Smith* situation. There are also critical distinctions with regard to the nature of the deadlines. The deadline in *Smith* was tied to the date of the worker's injury and was six months; the worker knew of the deadline from its inception and had a relatively lengthy time to comply with it. On the other hand, absent the filing, the party in whose favor the deadline operated, the carrier, had no notice of the claim whatsoever and no knowledge of the deadline. In a Chapter 13 case, in contrast, the party in whose favor the deadline operates, *i.e.,* the debtor, controls the timing of the filing of the bankruptcy petition and, as a conse-

quence, the establishment of the deadline, which is a relatively short 90 days. Finally, a court adjudicating state law worker's compensation rights is not a court of equity with a responsibility to apply legal principles in an equitable context. In view of these differences, different considerations should govern application of the mailbox presumption in a Chapter 13 case.

*Konst* and *Barnett* address the mailbox presumption in the context of filing proofs of claim in bankruptcy cases only in *dicta*, and *Smith* is not controlling. There is, therefore, no controlling precedent in the Eleventh Circuit. As noted above, cases in other courts of appeal have adopted different rules.

The Seventh Circuit in *In re Nimz Transportation, Inc.*, 505 F.2d 177 (7th Cir.1974), ruled that the mailbox presumption applied in determining the timely filing of proofs of claim, dealing with the issue on straightforward evidentiary principles. Implicit in its holding is a recognition that "filing" of a proof of claim with a bankruptcy court clerk's office requires nothing more than receipt of it. The court ruled, as a matter of fact, that "timely and accurate mailing raises a rebuttable presumption that the mailed material was received, and thereby filed." *Id.* at 179.

In refusing to apply the mailbox presumption to the filing of a proof claim, the Third Circuit in *Chrysler Motors Corp. v. Schneiderman (In re Schneiderman)*, 940 F.2d 911 (3d Cir.1991), ruled that the provisions of Rule 9006(e) of the Federal Rules of Bankruptcy Procedure for *service* of certain papers to be complete upon

mailing demonstrated that the "framers of the rules knew how to provide for such use to complete a delivery and thus gives rise to an inference that filing within Rule 5005(a) means actual filing." *Id.* at 914. The court then explained the policy reasons that favor this result, *id.* at 914–15:

> If we adopted the rebuttable presumption rule we would greatly complicate bankruptcy administration, as it would be uncertain in many cases whether a scheduled creditor failed to file a proof of claim because of an oversight or because it was abandoning its claim. We also point out that a creditor can protect itself with minimal expense through the use of certified mail with a return receipt requested when filing a proof of claim or, if convenient, can provide for manual filing across the counter in the clerk's office. Furthermore, a rebuttable presumption rule would easily permit a creditor which failed to file a proof of claim to fabricate evidence, not easily disprovable, that it had been properly mailed.

The proper inference to be drawn from Rule 9006(e)'s provision that service of a paper is complete upon mailing and the absence of such a provision for filing is that filing is not complete upon mailing. The issue, however, is not whether filing is complete upon mailing (it most assuredly is not); [8] rather, the issue is whether the receipt that establishes filing may be presumed upon proof of proper mailing. As discussed above, the clerk's receipt of a paper delivered for filing is all that is necessary for filing. The proper question, therefore, is an evidentiary one that the

---

**8.** It is important to note that application of the mailbox presumption as an evidentiary matter to permit proof of delivery of a paper does not mean that filing occurs when the paper is mailed. *See United States v. Lombardo*, 241 U.S. 73, 76, 36 S.Ct. 508, 60 L.Ed. 897 (1916). Moreover, the mailbox presump-

tion has no evidentiary function if the mailed item is actually received. Thus, a proof of claim mailed prior to the bar date but received after its expiration is not timely filed. *E.g., In re Thomas*, 181 B.R. 674 (Bankr. S.D.Ga.1995).

Federal Rules of Bankruptcy Procedure do not answer: was the properly mailed paper in fact received? The teaching of *Konst* and *Barnett* is that the mailbox presumption is a "traditional means of weighing evidence in order to determine whether receipt occurred." *Konst, supra,* 71 F.3d at 853; *Barnett, supra,* 283 F.3d at 1239. Under these holdings, the mailbox presumption should be available to assist in determining whether receipt occurred.

The Third Circuit's concerns about bankruptcy administration, expressed in the context of a Chapter 11 case and a substantial commercial claim asserted by a sophisticated corporate institution, are not implicated in this case or, indeed, in a typical Chapter 13 case. The court in *Chrysler Motors Corp.* was concerned about the need for certainty and finality with regard to the voting and distribution rights of other creditors. *Chrysler Motors Corp.*, 940 F.2d at 913. In Chapter 13 cases, creditors are not permitted to vote and, as this case demonstrates, confirmation often occurs prior to the bar date.[9] Because the Chapter 13 plan in this case, typical of those in this district, provides for payment of priority and secured claims ahead of general unsecured claims, allowance of a claim mailed but not docketed will ordinarily create no distribution problems where the problem is promptly discovered. Clearly, this Chapter 13 case indicates that there has been no need for speedy resolution of claims.

It is true that application of the mailbox presumption rule may permit unscrupulous creditors to fabricate evidence. Yet a creditor determined to do so could as easily invent an affidavit that the claim had been handed over the counter. Moreover,

such concerns may be addressed if application of the mailbox presumption is conditioned on the existence of other factors that are present here, such as active participation in good faith in the case prior to the bar date, prompt action to establish the filing of record, the knowledge of the Debtor and Chapter 13 Trustee of Creditors' assertion of the claim, the absence of unfair prejudice to other parties or the distribution process, or other corroborating circumstances such as preparing and mailing the proof of claim on the day before the § 341(a) meeting.

It is also true that a corporation or other commercial entity, like the creditor in *Chrysler Motors Corp.*, with a substantial claim might be expected to mail its proof of claim by certified mail or to arrange for its manual filing at the counter. In this case, Creditors are local and have an attorney who could have easily filed the proof of claim manually on one of his trips to the Courthouse which houses both the clerk's office and the § 341(a) meeting room or followed up to determine whether the proof of claim he mailed had been docketed. But the proof of claim form and notice to creditors of the debtor's bankruptcy filing do not prescribe certified mail, manual filing, or checking the docket, and the Official Form contemplates submission of claims by mail. Moreover, most debtors have creditors all over the country who would find it difficult or in any event quite expensive to arrange for manual filing or to physically check the docket.

Neither the technical legal reasoning nor the policy rationale expressed in *Chrysler Motors Corp.* provides compelling reason to defeat a substantive claim on procedural grounds that have not made

---

**9.** The initial confirmation hearing in this case was scheduled for May 17, well before the bar date of July 23.

any difference. On the other hand, as noted by the court in *In re Kriegish,* 280 B.R. 132 (E.D.Mich.2002), in holding that the doctrine of excusable neglect permitted a party mailing a notice of appeal to proceed where it was received two days late, "it is proper to apply a rule of reason to the practice [of transmitting papers by mail to the court] and grant some latitude to a litigant who places a document in the mail with apparently ample time for delivery." These considerations favor following the Seventh Circuit's holding in *Nimz Transportation* that the mailbox presumption is applicable to the filing of proofs of claim.

The rationale for applying the *Nimz Transportation* rule and rejecting the *Chrysler Motors Corp.* result is set out in *In re Pyle,* 201 B.R. 547 (Bankr.E.D.Cal. 1996), which involved a creditor's invocation of the mailbox presumption in a Chapter 13 case in circumstances similar to those presented here. The *Pyle* court observed that there was no dispute about the creditor's debt, that the debtor had planned to pay it, that the plan provided for 100 percent payment to creditors, and that allowance of the claim would not impact distributions to other creditors. The court found that the debtor could not point to any prejudice by the absence of an earlier docketed claim and, therefore, concluded, *id.* at 551:

> Rather, Debtor simply hopes to seize upon a bureaucratic mistake in the docketing of the creditor's proof as a means by which to ensnare the creditor and repudiate a debt, one already scheduled for payment. This court might closely question the applicability of the mailbox presumption upon a showing of any prejudice to either the Debtor or some other creditor. But without that show-

ing, the *Nimz* case states the better rule.

■ This Court must determine whether Creditors timely filed a proof of claim, which depends on whether the clerk's office timely received it. In determining which rules apply in making that determination, it is appropriate to keep in mind that, as stated in *United States v. International Horizons, Inc.,* 751 F.2d 1213, 1216 (11th Cir.1985):

> It is well accepted that the bankruptcy court is guided by the principles of equity, and that the court will act "that fraud will not prevail, that substance will not give way to form, that technical considerations will not prevent substantial justice from being done." [10]

Moreover, the Federal Rules of Bankruptcy Procedure, which govern the time and manner of filing proofs of claim, direct the court to construe them "to secure the just, speedy, and inexpensive determination of every case and proceeding." FED. R. BANKR.P. 1001.

Creditors here actively participated in the case in good faith, the Debtor and Chapter 13 Trustee had knowledge of the existence of the claim, and there is no unfair prejudice or adverse effect on the claims allowance and distribution process. In these circumstances, the Court's equitable duty to act so that substance does not give way to form and so that technical considerations do not prevent substantial justice from being done and the mandate of Rule 1001 require application of the mailbox presumption in accordance with *Nimz Transportation* and *Pyle.*

Although this application of the mailbox presumption in accordance with *Nimz Transportation* and *Pyle* contradicts the dicta in *Konst* and *Barnett* that the mailbox presumption does not apply to a filing

10. The court quoted *Pepper v. Litton,* 308 U.S. 295, 305, 60 S.Ct. 238, 84 L.Ed. 281 (1939).

in a court, the ruling follows the holdings of those cases. In applying the presumption, the Eleventh Circuit in both cases stated that the claimant was entitled to "the benefit of this traditional means of weighing evidence in order to determine whether receipt occurred." *Konst, supra,* 71 F.3d at 853; *Barnett, supra,* 283 F.3d at 1239. The clear holding of these cases is that receipt can be assumed through the rebuttable presumption that a properly mailed item is received.

As discussed above, nothing more than the Clerk's receipt of a paper is necessary to establish its filing. The clerk regularly receives items by mail or over the counter and thereafter routinely dockets them. If a filing party establishes that the clerk's office received a paper, the filing party surely cannot be penalized merely because the paper for some reason was not docketed.

The foregoing analysis, then, establishes two premises. The first is that, under the holdings of *Konst* and *Barnett,* proof of proper mailing establishes a rebuttable presumption of receipt. The second is that receipt, and nothing more, constitutes filing of a paper. The logical conclusion from these two premises is that proof of proper mailing of a paper to the clerk's office, in the absence of contrary evidence, establishes filing of the paper. This, of course, is exactly what the Seventh Circuit held in *Nimz Transportation.* The same analysis applies in the circumstances of this case.

In addition to following the holdings of *Konst* and *Barnett,* the application of the mailbox presumption in this case follows two other important principles found in Eleventh Circuit precedent. First, as noted above, the mailbox presumption applies to prevent *creditors* from claiming that an item properly mailed to them was not received in the absence of other proof.

*Standley v. Graham Production Co.,* 83 F.2d 489 (5th Cir.1936). Creditors, in fairness, ought to have the same presumption work in their favor when it is they who do the mailing. Second, application of the mailbox presumption to permit the allowance of an admittedly valid claim when the delay in its docketing has not made one whit of difference in the administration of the case is obviously consistent with the mandate of *International Horizons, supra,* that a bankruptcy court act to assure that substance not give way to form and that technical considerations not prevent substantial justice from being done. *International Horizons,* 751 F.2d at 1216.

Based on the foregoing analysis and authorities, the Court concludes that the mailbox presumption is applicable in this case to establish the rebuttable presumption that the clerk's office received the proof of claim mailed on June 25. Because that presumption has not been rebutted, the Court assumes that the Clerk's office timely received the proof of claim. The Clerk's receipt of the proof of claim establishes its filing. Therefore, there has been a timely filing of the proof of claim mailed on June 25 as Rule 3002(c) requires.

The proof of claim docketed on November 1, 2001, is substantively equivalent to the proof of claim mailed on June 25. In view of the determination that the mailed proof of claim was timely filed in accordance with Rule 3002(c), it is proper to allow the docketed proof of claim as a substitute for the timely filed claim.

### III. CONCLUSION

In summary, Creditors' proof of claim mailed on June 25, 2001, is allowable as a timely filed, and otherwise undisputed, claim. Creditors' proof of claim docketed on November 1, 2001, is substantively

equivalent to that timely filed proof of claim that was not docketed and is allowable as a substitute for a timely filed proof of claim. Creditors having timely filed a proof of claim, Debtor's objection based on untimely filing under 11 U.S.C. § 502(b)(9) must be overruled. A judgment in accordance with this opinion will be entered.